862 S.W.2d 806 (1993)
ACME BOOT COMPANY, INC., Appellant,
v.
Salvador MONTENEGRO, Appellee.
No. 08-93-00017-CV.
Court of Appeals of Texas, El Paso.
September 22, 1993.
*807 Mark R. Flora, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for appellant.
Mark F. Howell, and Ken Slavin, Brower & Slavin, El Paso, for appellee.
Before KOEHLER, BARAJAS and LARSEN, JJ.

OPINION
LARSEN, Justice.
Employer/defendant Acme Boot Company appeals from a judgment for plaintiff/employee Salvador Montenegro following a jury trial. The jury found that Acme discharged Montenegro for exercising his rights under Texas Workers' Compensation Act, a violation of Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon Pamph.1993); that the discharge was willful and malicious; and awarded plaintiff $40,000 actual and $100,000 exemplary damages. Acme complains that the evidence does not support the jury's verdict, that the amount of exemplary damages was excessive, and that the trial court should not have assessed prejudgment interest on the award for future damages. We affirm.

FACTS
Salvador Montenegro began learning the bootmaking craft when he was thirteen years old in Juarez, Mexico. In 1981, he started work for Acme Boot Company as a heel laster.[1] Acme has two unincorporated divisions *808 in El Paso: Lucchese, the "Rolls-Royce" of bootmakers, which makes an exclusively handmade product of all-natural materials; and Dan Post Boots, which uses some machine work and synthetics. During the relevant period, Acme housed both divisions in the same building. Montenegro's first job with Acme was in the Dan Post division.
Montenegro was laid off from Dan Post in 1985, and he began working for another bootmaker two weeks later. Dan Post had recommended him to the second company, and it called Montenegro to solicit his employment. Four months later in August 1986, Acme recalled Montenegro to work for its other division, Lucchese. During this period, Montenegro would perform heel seat lasting for Dan Post from time to time, as well as Lucchese.
On October 27, 1987, while trying to keep a boot rack from falling over, Montenegro hurt his back. He was taken to the hospital and stayed off work for two weeks. Although his written work evaluations had been good to excellent before the injury, after returning to work his evaluations suddenly became unsatisfactory. His supervisor gave him a warning on April 4, 1988 for not properly inspecting boots; Montenegro refused to sign the warning because, as a heel seat laster, it was not his job to inspect boots and he did not even see their top side while working on them.
In April 1988, Montenegro took a leave of absence for back surgery stemming from his on-the-job injury. Acme's personnel managers knew plaintiff was entering the hospital, and that he would be off work for about six months to recuperate. The doctors released him to return to work as of November 23, 1988. Montenegro came into the plant November 14 and spoke with Hilda Matthews, a personnel administrator, telling her he would be returning shortly. She told him to come back to work as he normally did. When he returned on November 23, however, Montenegro was told there were no vacancies for him. Matthews said she would call him if Acme had openings in either division. Acme had in fact hired a second heel laster for Lucchese just days before, on November 9, 1988.
Acme has a policy of terminating laid-off employees if they are not recalled within six months. Montenegro was terminated on August 4, 1989, eight months after his release by the doctors, with the notation "Economic Termination/Laid off for 8 months." During this time, Acme hired 49 new employees; 23 at Lucchese and 26 at Dan Post. Montenegro, who had worked in the boot industry all his life, was capable of performing a number of these jobs. Nevertheless, Acme never recalled him.

VIOLATION OF ARTICLE 8307c
The jury here found that Acme Boot Company discharged Salvador Montenegro because he in good faith filed a claim, hired a lawyer to represent him, instituted a proceeding under the Texas Workers' Compensation Act, or intended to testify in a compensation proceeding. This, of course, is prohibited by Texas law. Tex.Rev.Civ.Stat. Ann. art. 8307c, § 1. The evidence in an Article 8307c case need not show that discriminatory motive was the only reason for Montenegro's firing; the evidence is enough if it shows his worker's compensation claim contributed to Acme's decision to terminate him. Worsham Steel Co. v. Arias, 831 S.W.2d 81, 84 (Tex.App.El Paso 1992, no writ). Plaintiff may show the causal connection by circumstantial evidence and by reasonable inference from such evidence. Investment Properties Management v. De Montes, 821 S.W.2d 691, 694 (Tex.App.El Paso 1991, no writ); Paragon Hotel Corp. v. Ramirez, 783 S.W.2d 654, 658 (Tex.App.El Paso 1990, writ denied).

FACTUAL SUFFICIENCY OF THE EVIDENCE
In its first point of error, Acme claims the jury's finding that it violated the worker's compensation laws in discharging Mr. Montenegro is against the overwhelming weight of the evidence, a "factual sufficiency" challenge to the verdict. In reviewing a factual sufficiency challenge, this Court considers *809 and weighs all the evidence presented at trial. Lofton v. Texas Brine Corporation, 720 S.W.2d 804, 805 (Tex.1986). We may set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). This Court is not a fact finder, so we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence would clearly support a different result. Clancy v. Zale Corporation, 705 S.W.2d 820, 826 (Tex. App.Dallas 1986, writ ref'd n.r.e.). Reviewing the evidence under this standard, we find that sufficient evidence supports the verdict.
Acme's position is that Montenegro was discharged after six months under a neutral company layoff policy, because during the time between his doctor's release and his automatic discharge, no jobs were available at Lucchese that Montenegro was qualified to perform.[2] Dan Post, however, had a number of openings that Montenegro was qualified for, including two lasting jobs he had done in the past.
Acme argues that Lucchese and Dan Post were run as entirely autonomous divisions within the company and that hirings within Dan Post were therefore irrelevant to Montenegro's recall as a Lucchese employee. Acme claims that Lucchese's employees never did Dan Post work, Acme never transferred workers between the two divisions, and that laid-off employees of one division were never recalled to the other. We find that, although this was indeed Acme's theory of the case,[3] plaintiff presented ample evidence to the contrary and the jury was free to accept plaintiff's evidence as true, rejecting that of Acme.
For example, Mr. Montenegro testified that he would do heel seat lasting for both Dan Post and Lucchese when Dan Post's machine was broken. After his layoff in 1985 from Dan Post, Montenegro was recalled by Lucchese. Jose Martin Ayala, Montenegro's former supervisor, testified he was promoted from Dan Post to Lucchese. Cecy Knight, Acme's personnel manager, and Hilda Matthews, personnel administrator, each worked simultaneously for both the Dan Post and Lucchese divisions. Montenegro's 1988 layoff and termination forms are both headed "Dan Post Boots," the employer's first report of injury to the Industrial Accident Board lists his employer as "Acme Boot Company," signed by Cecy Knight as personnel manager "Acme-Lucchese Boot Co., Inc." Montenegro's W-2 forms 1987 and 1988 show his employer as "Post Boot Co. El Paso Plant." His payroll form is entitled "Acme Boot Co., Lucchese Plant." Thus, it was not at all clear that Montenegro worked exclusively for Lucchese, nor that Lucchese and Dan Post were separate, autonomous divisions of Acme. The jury was entitled to infer that hirings at Dan Post were relevant, and that because Acme hired at least seven people for jobs Montenegro was qualified to perform while he was on layoff status, his ultimate discharge was motivated by his exercise of rights under the worker's compensation laws. Point of Error One is overruled.

WILLFUL OR MALICIOUS ACT
In its second point of error, Acme claims that no evidence supports the jury finding that it acted willfully or maliciously in discharging Montenegro. When presented with a "no evidence" or legal sufficiency challenge, this Court considers only that evidence and its reasonable inferences, viewed in the light most favorable to the verdict, which support the jury verdict. We disregard all evidence and inferences to the contrary. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987); Alm v. Aluminum Company of *810 America, 717 S.W.2d 588, 593 (Tex.1986). We may sustain a "no evidence" point of error only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) a bar by rules of law or evidence preventing giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. Commonwealth Lloyd's Ins. Co. v. Thomas, 678 S.W.2d 278, 288 (Tex.App.Fort Worth 1984, writ ref'd n.r.e.), citing Royal Indemnity Co. v. Little Joe's Catfish Inn, 636 S.W.2d 530, 531 (Tex.App.San Antonio 1982, no writ); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L.Rev. 361, 362-63 (1960). Using this stringent standard of review, we conclude there is some probative evidence to support the jury's finding of malice.
The court's charge to the jury properly defined "a malicious act" as:
[A]n intentional wrongful act done without just cause or excuse before one believes it to be right or legal or done with conscious disregard for the rights of others. Willfulness and malicious intent may be inferred from the conduct of the wrongdoer.
Acme did not object to this definition, nor does it argue on appeal that the definition incorrectly states the law. It argues, rather, that Montenegro presented no evidence that his discharge after the layoff period was even unlawful, let alone malicious. We do not agree.
We find that the evidence recited above, in support of the jury's finding that Montenegro's discharge violated Article 8307c, could also be considered by the jury in finding that he was discharged in conscious disregard of his rights. Moreover, personnel manager Knight testified that she knew it was illegal to deliberately keep an employee on layoff status until the time for automatic discharge elapsed, if the reason for doing so was to avoid rehiring an employee with a compensation claim. Acme hired a second Lucchese heel laster at almost exactly the time it knew Montenegro would be returning to work. After his on-the-job injury, Montenegro's supervisor gave him unsatisfactory employee evaluations following years of consistently good reviews, and Montenegro received an employee warning for failing to inspect boots, which was not his job. He and his former supervisor felt both these actions were unwarranted. Acme expanded and hired a number of new employees while keeping Montenegro in layoff status and terminating him for "economic reasons," although personnel managers told him they would call if there were any openings for which he was qualified. This evidence is sufficient to support the jury's finding that Montenegro's termination was an intentional act, done without just cause or excuse with conscious disregard for his rights. See Investment Properties Management, 821 S.W.2d at 696-97; Wal-Mart Stores, Inc. v. Kee, 743 S.W.2d 296, 298 (Tex.App.Tyler 1987, no writ). Point of Error Two is overruled.

EXEMPLARY DAMAGE AWARD
In its third point of error, Acme urges that the trial court should have granted a remittitur of the jury's $100,000 exemplary damage award. As the jury's malice finding is supported by the evidence, the amount of exemplary damages awarded against Acme was largely within its discretion. Investment Properties Management, 821 S.W.2d at 697. In awarding exemplary damage, the jury may consider a number of factors: the nature of the wrong, the frequency of the wrongs committed, the character of the conduct involved, the degree of the wrongdoer's culpability, the situation and sensibilities of the parties involved, the extent to which such conduct offends a sense of public justice and propriety, and the amount needed to deter similar acts in the future. Alamo National Bank v. Kraus, 616 S.W.2d 908, 910 (Tex.1981); Goswami v. Thetford, 829 S.W.2d 317, 321 (Tex.App.El Paso 1992, writ denied). Moreover, there is no set ratio between the actual and exemplary damages which is considered reasonable. Each case stands on its own facts. Unless the award is so large as to indicate it was the result of passion or prejudice, we will not set it aside. Alamo National Bank, 616 S.W.2d *811 at 910; Investment Properties Management, 821 S.W.2d at 697.
Here, the actual damages awarded by the jury amounted to $40,000 and the exemplary damages were $100,000. The ratio between the two is well within limits previously approved by this Court. See State Farm Mutual Automobile Insurance Co. v. Zubiate, 808 S.W.2d 590, 605 (Tex. App.El Paso 1991, writ denied); Investment Properties Management, 821 S.W.2d at 697; Wal-Mart Stores, 743 S.W.2d at 299. Point of Error Three is overruled.

PREJUDGMENT INTEREST
In its last point of error, Acme claims the trial judge should not have awarded prejudgment interest on the entire actual damage award, but only on any segregated past damages, as an Article 8307c case is not a claim for personal injury governed by Tex. Rev.Civ.Stat.Ann. art. 5069-1.05, § 6(a) (Vernon Supp.1993),[4] but is governed instead by the law pronounced in Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex. 1985). This Court willingly acknowledges that the question of prejudgment interest is, at this writing, unsettled. See Gem Homes v. Contreras, 861 S.W.2d 449 (Tex.App.El Paso 1993, n.w.h.); C & H Nationwide, Inc. v. Thompson, 810 S.W.2d 259 (Tex.App. Houston [1st Dist.] 1991, writ granted). We find however, that Article 8307c cases fall within the general category of "personal injury cases," and that the trial court therefore properly awarded prejudgment interest on the entire award.[5] In arriving at this conclusion, we note that the Texas Supreme Court has characterized Article 8307c damages this way:
The legislature refused to limit the employee's recovery to economic loss alone, therefore a greater measure of damages was obviously intended. The term "damages" standing apart seems to be an unrestricted standard.... Azar Nut Co. v. Caille, 734 S.W.2d 667, 669 (Tex.1987).
The damages recoverable in Article 8307c cases are those found in the common law: lost wages, lost job benefits, mental anguish, and exemplary damages. We find that these are personal injury damages, bringing this case within the ambit of the Article 5069-1.05, § 6(a), and that therefore prejudgment interest was properly assessed upon the entire unsegregated actual damage award.
In one case, decided after Cavnar and before the Legislature adopted the prejudgment interest statute, our Supreme Court overturned a Beaumont Court of Appeals' case holding prejudgment interest was available for unpaid medical services in a worker's compensation case. Standard Fire Insurance Co. v. Morgan, 718 S.W.2d 880, 882 (Tex.App.Beaumont 1986), rev'd in part and aff'd in part, 745 S.W.2d 310, 313 (Tex. 1987). The Beaumont Court reasoned that claims for worker's compensation were personal injury actions and that plaintiff was therefore entitled to interest on unpaid medical expenses incurred because of her injury. Morgan, 718 S.W.2d at 882. In reversing this point, the Supreme Court did not hold that actions under the worker's compensation laws were not personal injury actions, but *812 rather based its decision upon the detailed payment scheme already set out in the Act:
[T]his Court has already recognized that a "worker cannot recover pre-judgment interest on past medical expenses because such expenses are not `past due weekly installments' within the meaning of article 8306a." [Cite omitted]. Unlike the Wrongful Death Act discussed in Cavnar, the Legislature has enacted an exact compensation scheme within the Workers' Compensation Act. Morgan, 745 S.W.2d at 313.
While this reasoning applies to payments due directly under the Act, both as to weekly payments to the claimant and payments to medical care providers, we find it does not apply to judgments for damages under Article 8307c. The damages available under that statute are those available at common law; there is no legislative scheme for payment to the wrongfully discharged worker; indeed, the law governing damages in Article 8307c cases has been formulated entirely by the courts. See Carnation Co. v. Borner, 610 S.W.2d 450, 454 (Tex.1980) (future lost wages recoverable in Article 8307c case); Azar Nut Co., 734 S.W.2d at 669 (exemplary damages recoverable); Worsham Steel Co., 831 S.W.2d at 85 (mental anguish damages recoverable); General Electric Co., 747 S.W.2d at 831 (lost job benefits recoverable).
We therefore hold that Article 8307c cases are personal injury cases within the meaning of Article 5069-1.05, § 6(a), that these cases do not fall within any specialized legislative scheme for assessing payments or interest, and therefore the general prejudgment interest statute applies. The trial court properly awarded prejudgment interest for both past and future actual damages. Acme's Point of Error Four is overruled.

CONCLUSION
The evidence was sufficient to support the verdict in this case; the exemplary damage award was not excessive; prejudgment interest was proper. We affirm the trial court's judgment.
NOTES
[1] A laster's job, essential to the bootmaking process, is that of forming and shaping the boot's heel and affixing it to the upper part of the boot.
[2] Actually, there was one janitorial job at Dan Post which Montenegro was clearly qualified to perform. Acme countered by arguing Montenegro was overqualified for this job, and was not called to fill it for this reason. Acme pointed to no written or formal company policy against recalling laid-off employees to jobs below their skill level. The jury, of course, was free to interpret this evidence in any reasonable manner.
[3] We note that Acme did not request the jury be instructed that Lucchese and Dan Post were different entities, nor did it request a jury question on this disputed issue. Acme did not object to the charge given by the trial court.
[4] Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest.... prejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered. Tex.Rev.Civ.Stat.Ann. art. 5069-1.05, § 6(a).
[5] Two courts of appeals have considered prejudgment interest in Article 8307c cases without reaching the precise question before us here.

In General Electric Co. v. Kunze, 747 S.W.2d 826(Tex.App.Waco 1987, writ denied), without specifically holding that prejudgment interest was in fact recoverable, the Court noted that plaintiff's economic expert had already compounded interest on the plaintiff's losses. The jury awarded the amounts which the expert had projected. Therefore, the Court held that the plaintiff had received the benefit of prejudgment interest, and the trial court therefore had not erred in awarding it as an additional element of the judgment.
In Borden Inc. v. De La Rosa, 825 S.W.2d 710 (Tex.App.Corpus Christi 1991), vacated, 831 S.W.2d 304 (Tex.1992), the plaintiff was awarded actual damages, punitive damages, interest, and costs. Without comment on the propriety of prejudgment interest, the Court ordered a remittitur of past lost wages and exemplary damages only.