PACESETTER CORPORATION
d/b/a Pacesetter Products,
Inc., Appellant,

v.

Terry **BARRICKMAN**, Appellee.

No. 12–93–00134–CV.

Court of Appeals of Texas,
Tyler.

Sept. 30, 1994.

**258**

James E. Hughes, Merriman, Patterson & Allison, Longview, TX, for appellant.

J.R. "Rusty" Phenix, Phenix and Phenix, Henderson, TX, for appellee.

BILL BASS, Justice.

This is an appeal from a judgment awarding actual and punitive damages to Barrickman for his discharge by Pacesetter for filing a worker's compensation claim. We will affirm.

Barrickman started to work for Pacesetter in 1982, holding a variety of positions with the company. He worked as a factory representative, senior factory representative, assistant sales manager and sales manager of the Shreveport and Ft. Worth offices. Except for a short period in 1987, he worked for Pacesetter until his discharge in 1989. There is evidence that in late May Barrickman's supervisor, Mike Irons, discussed his poor sales performance with him, and gave him notice that he might be discharged after thirty days unless his performance improved. On June 9, 1989, Barrickman sustained an on the job injury. There seems to be no question about the genuineness of his injury. On June 16, he completed and turned in to his sales manager, Mike Irons, the employee's first report of injury form. Forty-five minutes later, Irons fired Barrickman. His firing was only twenty days after the thirty day notice. Barrickman's injury required back

surgery. He filed a worker's compensation action claiming he was totally and permanently disabled. He settled his claim on January 23, 1991 against Pacesetter's carrier, Hartford Accident and Indemnity Company. Three weeks later on February 11, 1991 Barrickman filed the present action alleging that his discharge was in violation of Article 8307c, and asserting that he was capable of performing the duties of his former employment with Pacesetter.

In March of 1982, Pacesetter offered Barrickman full reinstatement to his former position, and he returned to work March 23, 1992. Barrickman was given an independent contractor's contract to sign whose terms were inconsistent with Pacesetter's offer of full reinstatement to his former job. He was fired three days later for not signing the independent contractor's agreement. In April, Pacesetter again offered full reinstatement to Barrickman specifying that this time their reinstatement of benefits included all those that he had enjoyed when he was initially discharged. This time Barrickman did not accept the offer.

■ In its first point of error, Pacesetter contends that the trial court improperly permitted Barrickman to offer this own opinion of the past and future value of his lost employment benefits under Pacesetter's 401K plan (Pacesetter Retirement Investment Plan II). Pacesetter argues that Barrickman was not shown to have the specialized knowledge required in order to testify to the value of benefits under the plan. Pacesetter also argues that Barrickman's value testimony was improper because he had not been designated as an expert witness.

In calculating the future value of his interest in the 401K retirement plan had he not been fired, Barrickman relied on documents introduced into evidence without objection, including a brochure explaining the plan to its participants. He calculated his contribution at 5% of his average earnings for the two-plus years before Pacesetter fired him, plus the 25% of his contribution that Pacesetter contributed. The interest on the account was compounded annually assuming 8½, 9, and 10 percent interest. There was evidence that the plan had not earned less than 8.93

percent over the last twenty years. Barrickman was forty-four at the time of trial. His calculations assumed that he would work until the age of 65. Barrickman testified that, assuming 8½ percent interest (the plans performance in 1992), the plan's value after 21 years would be $102,449.10; assuming 9% interest (the performance rate of 1991), its value would be $110,004.90. Assuming a ten percent return on investment, his interest in the plan would be worth $124,923.82 when Barrickman·became 65. Pacesetter's information brochure, introduced into evidence without objection, contained an example assuming a $2,000.00 annual contribution at a ten percent return. After twenty years the employee's interest was worth $169,538.00. Similarly, Barrickman's lost medical and dental insurance premiums and car allowance were calculated by multiplying Pacesetter's monthly contribution times the months remaining before Barrickman reached age 65. Pacesetter's contribution was taken from documents introduced without objection which stated the company's contribution.

We agree with the trial judge that the valuation of the plans and benefits did not require an expert economist, but, at the most, a knowledge of the multiplication tables and the calculation of simple interest.

Given the information available, Barrickman did not need an expert to value the retirement plan and other benefits. Pacesetter's objections go to the weight, not the admissibility of Barrickman's testimony. Perhaps the jury would have been more impressed by an expert. Barrickman testified to loss of $181,176.77 in future employment benefits other than wages. The jury awarded $7,000.00. The first point of error is overruled.

■ In its second point of error, Pacesetter insists that the trial court erred in excluding evidence of the dates on which Barrickman settled his workers' compensation claim and the date the present action was filed. Barrickman settled his workers' compensation case, in which he alleged that he was totally and permanently disabled, eighteen days before filing the present suit, claiming that he was physically capable of

performing the duties of his former job. Pacesetter argues that evidence of Barrickman's inconsistent positions in the two lawsuits was admissible for purposes of impeachment.

Barrickman's treating physician discharged him to return to work with minor restrictions on May 2, 1991, two and a half months after the present suit was filed.

In *Hartford Accident & Indem. Co. v. McCardell,* Hartford maintained that the trial court correctly admitted documentary evidence of a workers' compensation claimant's claim of total and permanent incapacity from a 1955 injury, because the statement was inconsistent with his position that he was totally and permanently disabled as a result of being kicked by a mule in 1957, and that the 1955 injury did not affect his incapacity. Judge Hamilton, writing for the Supreme Court, characterized the claim of permanent incapacity contained in a claimant's report of a 1955 injury to the Industrial Accident Board as a mere prediction, and "not susceptible of inconsistency with a statement of fact at trial [of a 1957 injury] that the 1955 injury [was] not then affecting the injury sued on.... [A] prediction is not an assertion of the truth of the fact predicted." *Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 338 (Tex.1963).

Although Pacesetter makes much of the passage of only eighteen days between the settlement of one suit and the institution of the other, the allegation that his disability was total and permanent was made when the petition in the workers' compensation was filed in 1990, a year before the settlement. The prior assertion was only a prediction, and not admissible for impeachment or as an admission. The trial court did not err in excluding evidence of the dates of the settlement of the one case and the institution of the other. Pacesetter's second point is overruled.

By its third point, Pacesetter urges that the trial judge erred in excluding evidence of the $60,000 Barrickman received in settlement of his workers' compensation claim approximately a year and a half after his injury and discharge. In Pacesetter's view, this evidence was admissible in rebuttal of Barrickman's claim for mental anguish resulting from his financial hardship.

Barrickman testified that his discharge and subsequent joblessness made it necessary for him to sell his personal property and receive food stamps and caused the attempted foreclosure. He testified that the resulting financial hardship resulted in great stress in his marriage and in his relationship with his children. While acknowledging that Rule 408 of the Texas Rules of Civil Procedure forbids the introduction of settlements and settlement negotiations to prove liability, Pacesetter argues that Rule 408 does not require the exclusion of such evidence when it is offered for a purpose other than proof of liability. The cases cited by Pacesetter involve the introduction of evidence of "Mary Carter" agreements in order to show bias or prejudice.

■ It is well settled Texas law that collateral sources of payment to an injured plaintiff are inadmissible. *Kainer v. Walker,* 377 S.W.2d 613 (Tex.1964) (overruled on other grounds). The rule against evidence of settlements embodied in Rule 408 should not be confused with the collateral source rule barring evidence of collateral sources of income to the plaintiff. The prohibitions contained in both rules have overlapping applications since settlements may constitute a collateral source. However, the collateral source rule is much broader in its application, forbidding evidence of all collateral sources of income, not simply settlements.

*Azar Nut Co. v. Caille,* 720 S.W.2d 685 (Tex.App.—El Paso 1986), *aff'd.,* 734 S.W.2d 667 (Tex.1987), was a suit for wrongful termination under the Workers' Compensation Act. The El Paso Court of Appeals rejected the same argument advanced by Pacesetter. The employer, *Azar Nut Co.,* attempted to introduce evidence of the former employee's receipt of social security and retirement benefits to explain her failure to find employment. The El Paso Court of Appeals held the evidence was properly excluded since it was evidence of income from a collateral source.

■ The trial court correctly excluded the evidence of the settlement since it represent-

ed evidence of income from a collateral source. Point of error three is overruled.

Pacesetter in its fourth point maintains that the trial court erred (1) in questioning witnesses during Pacesetter's examination of the witnesses, (2) in suggesting in the presence of the jury that Pacesetter's questions were irrelevant, and (3) in commenting in the presence of the jury that Pacesetter worked "hand in glove" with its workers' compensation insurance carrier. It argues that the judge's remarks were comments on the weight of the evidence and calculated to lead the jury to infer collaboration between Pacesetter and its workers' compensation carrier in discharging plaintiff.

■ Pacesetter cites five incidents of alleged judicial misconduct. However, Pacesetter never raised a timely objection complaining of the judge's comments or conduct, nor did it request a curative instruction or mistrial. If objectionable remarks by the judge are of the type which could have been rendered harmless by a proper instruction from the judge, failure to object to such remarks and to request a curative instruction waives error. *State v. Wilemon*, 393 S.W.2d 816 (Tex.1965). The same rule applies in the case of a comment on the weight of the evidence. An objection must be *promptly* made or an instruction requested or the error is waived.

■ The trial court has a right to inquire concerning the purpose of a line of questioning during both direct and cross-examination, since he must be granted considerable discretion in controlling the orderly progress of the trial. *Prudential Ins. Co. of America v. Uribe*, 595 S.W.2d 554 (Tex. App.—San Antonio 1979, writ ref'd n.r.e.). Even if the statements complained of constitute comments on the weight of the evidence, they must be examined in the light of the entire record to determine whether they amounted to reversible error. *TEIA v. Garza*, 557 S.W.2d 843 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Even conceding for the sake of argument that the judge's comments constituted error, none were so egregious that they could not have been cured by instruction. Error, if any, was waived. Point number four is overruled.

■ In its fifth point, Pacesetter contends that the evidence was both legally and factually insufficient to prove that Barrickman was discharged in violation of the TEXAS WORKERS' COMPENSATION ACT.

"In deciding a no evidence point, this court must consider only the evidence and inferences tending to support the jury's finding," viewed in most favorably to the finding, "and disregard all contrary evidence inferences." *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). In determining a factual sufficiency point, we must consider and weigh all of the evidence in the case, and set aside the verdict and remand the case for a new trial only if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951).

Pacesetter argues that Barrickman failed to prove a causal connection between his filing of the workers' compensation claim and his discharge. Pacesetter stresses that before his injury Barrickman had been warned of his substandard sales performance and given thirty days notice that he was subject to dismissal if his performance did not improve.

Barrickman was fired forty-five minutes after delivering his employees first report of injury to his supervisor. Although Pacesetter stresses that he had already been given thirty days notice that his sales must increase, he was fired only twenty-one days after the "thirty day notice." Barrickman testified that the notice was given only to cover the supervisor because he had allowed Barrickman to go on vacation without having notified the home office. Both Barrickman's acknowledgement of the so-called thirty day notice, and the notice of his termination arrived at the home office on the same day. Pacesetter's records showed that none of the sales force performed up to company standards. In January, preceding his discharge, he was eleventh out of twenty-one salespersons at the Dallas Center; in February, he was third out of twenty-five; in March, thirteenth out of twenty-one; and in April, ninth out of twenty-one. There is evidence that

Barrickman outperformed the supervisor who fired him.

The evidence is both legally and factually sufficient. Pacesetter's fifth point is overruled.

Pacesetter complains in its sixth point that "the trial court erred in submitting the question to the jury as to whether [Pacesetter] acted willfully and maliciously in discharging [Barrickman], and in subsequently rendering judgment for exemplary damages ... and because there was legally and factually insufficient evidence to support a finding of malice and the resulting award of exemplary damages.

Over Pacesetter's objection, the following question was:

> If you have answered Question No. 1 "yes," then answer Question No. 3. Otherwise, do not answer Question No. 3.

#### QUESTION NO. 3

Did the Pacesetter Corp. d.b.a. Pacesetter Products, Inc. act willfully or maliciously in discharging Terry Barrickman?

> A "malicious" act is an intentional wrongful act done without just cause or excuse before one believes it to be right or legal or done with conscience disregard for the rights of others. Willfulness and malicious intent may be inferred from the conduct of the wrongdoer.

The jury answered affirmatively, awarding $50,000.00 in exemplary damages.

The trial court was required to submit the issue if the pleadings and *any* evidence supported its submission. *Elbaor v. Smith*, 845 S.W.2d 240 (Tex.1992). An objection that a particular answer to a special issue would be against the great weight of the evidence or that the evidence is factually insufficient to support such an answer will not justify refusal to submit the issue. *Meadows v. Green*, 524 S.W.2d 509, 510 (Tex. 1975).

Pacesetter's firing of Barrickman within 45 minutes of the filing of his report of injury and only twenty-one days after giving him a "thirty day" notice is, in itself, sufficient evidence from which the jury might infer that Barrickman's discharge was "an intentional wrongful act done without just cause or excuse before one believes it to be right or legal, or *done with* conscious disregard of the rights of others." There was no error in the submission of the issue, and the point is overruled.

Pacesetter contends in its seventh point that the trial court erred in not conducting separate trials on the issues of liability and exemplary damages. Before trial, the court had ordered a bifurcated trial so that the two issues might be tried separately. Pacesetter contends that the trial judge revoked this order during the trial without prior notice. The trial court's subsequent admission of evidence during Barrickman's case-in-chief showing that Pacesetter had a net worth in excess of fifty-five million dollars, created, in Pacesetter's view, an unfair bias in Barrickman's favor.

Rule 174 authorizes, but does not require, a court to grant a separate trial on any claim or separate issue to "further convenience" or "avoid prejudice." Tex.R.Civ.P. 174(b); *Beverly Enterprises v. Leath*, 829 S.W.2d 382, 387 (Tex.App.—Waco 1992, no writ). Appellate review of the trial court's refusal to grant a separate hearing on the issue of punitive damages is by an abuse of discretion standard. Pacesetter has cited no cases, nor have we discovered any cases, that hold that the trial judge abused his discretion in refusing to grant a separate hearing on the issue of punitive damages. We cannot conclude that the trial judge abused his discretion in this case. Appellant's seventh point is overruled.

In its eighth point of error, Pacesetter maintains that the trial court erred in excluding evidence of the manner in which Pacesetter handled other workers' compensation claims, including a prior claim by Barrickman. In assessing punitive damages, the jury was charged to consider the frequency of the wrongs committed, and the size of the award needed to deter similar wrongs in the future. Pacesetter argues that its manner of handling on-the-job injury claims was relevant to the determination of punitive damages, but also to show that Barrickman was

not discharged because of his claim. Pacesetter urges that the trial judge should have admitted such evidence as evidence of habit under Rule 406 of the TEXAS RULES OF CIVIL PROCEDURE.

To be admissible as habit testimony, the evidence must be of an individual's "regular response to a repeated specific situation." *Compton v. Jay*, 389 S.W.2d 639, 642 (Tex.1965). It may also be evidence of a regular practice or consistent behavior by an organization or group. *Mediacomp v. Capital Cities Communication*, 698 S.W.2d 207, 212 (Tex.App.—Houston [1st Dist.] 1985, no writ). Pacesetter, however, offered evidence of their handling of only two other workers' compensation claims. Although habit may be inferred from proof of specific instances of conduct, proof of only two other incidents does not meet the test of frequency and regularity to be habit evidence. TEX.R.CIV. APP. 406; *see Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C.Cir.1989); *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir.1985); *Lapierre v. Sawyer*, 557 A.2d 640, 641, 131 N.H. 609 (1989). The trial court did not err in excluding evidence of the two other claims.

In its ninth point of error, Pacesetter urges that the trial court erred in awarding damages beyond April 9, 1992. Barrickman demanded reinstatement to his job. On March 4, 1992, Pacesetter offered reinstatement together with his former benefits. He accepted the offer and returned to work but was immediately told to sign a contract as an independent contractor, which superseded all prior agreements and left him essentially without the benefits he had formerly enjoyed as a regular employee. When he attempted to meet with his supervisors to discuss the matter, they would not meet with him. He was once again fired for failing to sign the independent contractor's agreement whose terms were inconsistent with the offer of reinstatement tendered him by Pacesetter on March 4, 1992.

On April 9, 1992, Pacesetter offered Barrickman full reinstatement to his former position with all the former benefits that it was within Pacesetter's ability to provide. After the humiliation and depression he had suffered because of his discharge after his first so-called reinstatement, he could not consider the subsequent offer of re-employment as sincere.

A wrongfully discharged employee has a duty to mitigate his damages by making a good faith effort to obtain and retain employment. *Gulf Consolidated International Inc. v. Murphy*, 658 S.W.2d 565 (Tex.1983). The rejection of a job offer from the former employer does not in itself prove the employee's failure to mitigate his or her damages. *Azar Nut Co. v. Caille*, 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd.*, 734 S.W.2d 667 (Tex.1987). There was evidence that Barrickman had made an extensive search for employment. He testified that between the time of his discharge and the trial, he had contacted over eighty potential employers. The reasonableness of Barrickman's explanation for rejecting Pacesetter's offer and the sufficiency of his efforts to mitigate his damages were questions properly left to the jury. *Id.* at 688. Point nine is overruled.

Barrickman brings one cross-point contending that the trial court erred in failing to award pre-judgment interest on all the damages awarded by the jury. Appellant cites *Acme Boot Co. v. Montenegro*, 862 S.W.2d 806 (Tex.App.—El Paso 1993, no writ), for the proposition that the trial court should have awarded pre-judgment interest on both past and future damages found by the jury. However, in *Acme Boot Co.*, the damages were not segregated into past and future damages as they were in the instant case. Interest is awarded for the use and detention of money. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985). A claimant is unharmed by the retention of future damages prior to trial, since future damages are not accrued. The trial court did not err in failing to award pre-judgment interest on future damages. Barrickman's cross-point is overruled.

The judgment is **affirmed**.