**GIFFORD HILL AMERICAN, INC., Appellant,**

v.

**Paul V. WHITTINGTON, Appellee.**

No. 07–94–0090–CV.

Court of Appeals of Texas, Amarillo.

May 18, 1995.

True, Rohde & Sewell, Maureen F. Moore, Dallas, for appellant.

Carr, Fouts, Hunt, Craig, Terrill & Wolfe, Donald M. Hunt, Gary M. Bellair, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

From a judgment finding appellee Paul Whittington was wrongfully discharged and awarding $124,991 in actual damages, $100,-000 in exemplary damages, and prejudgment interest of $67,158.29, appellant Gifford Hill American (GHA) brings this appeal. Appellee's theory of recovery was that his firing was at least partially based on his efforts to recover workers' compensation, an action which, under statute, an employer may not consider when firing an employee. Tex.Rev. Civ.Stat.Ann. art. 8307c.[1] We reform the judgment of the trial court and, as reformed, affirm the judgment.

Appellee began working for GHA as a welder in 1972. In 1988, he was diagnosed with a back injury and underwent surgery for the injury. At the time of his diagnosis and surgery, appellee did not believe his

---

1. Repealed by Acts of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 990, 1235. (Current version at Tex.Lab.Code Ann. § 451.001 (Vernon Supp.1995)).

injury was work related. Upon his return to work, his employer provided him with a small crane to assist in moving heavy objects. In late March of 1989, appellee suffered an on-the-job injury to his neck but continued to work for several days after the injury. However, on the Monday following the injury, he informed his supervisor, Gene Daily, that he was unable to work because of the injury and that he was contemplating filing a workers' compensation[2] claim. According to appellee, Daily was upset to hear of his inability to work because of the injury and suggested he first use vacation time to see if his condition improved. As appellee did not have any accrued vacation time, Daily arranged for a week's vacation time for him. According to appellee, Daily made the arrangement because he was upset about the injury due to the consequences of the loss of injury-related work time. In addition to the financial implications of a work-related injury noted below, Daily would have received an award if he and his employees worked for 1000 days without any loss of work time because of an injury.

Appellee's work-injury-related absence would have other implications for both Daily and appellee's co-workers. Under GHA's safety program, each member of a safety team is awarded $25 and a free dinner for each quarter of the year that all members of the team work without injury. If any team member is injured during the quarter, no one receives the free dinner and the money awarded to the other members of the team is reduced by $5. The supervisor's award was reduced by $10 and the injured worker would not receive any award. If the injury resulted in the loss of work, the injured worker would not receive any awards for the remainder of the year. Those who were injured, and their supervisors, also lost the opportunity to participate in several drawings each year for awards totaling $50,000.

Appellee's last work day at GHA was April 17, 1989. On May 8 of that year, appellee had a myelogram performed and was told by his doctor on May 9 or 10 he needed surgery. On May 10, appellee told Daily of his need for surgery and was referred by Daily to Royce Adams, Daily's supervisor. According to appellee, Adams showed little reaction to the news. Around this time, GHA told Adams and Daily of the need to reduce the work force because of a reduction in the amount of work being done by the company. Daily was responsible for selecting the individual employees in his department to be "laid off."[3] Appellee was one of three employees selected by Daily to be "laid off." GHA asserts that under the company's policy, which we later discuss, Daily had no discretion in selecting individual employees to be "laid off." When appellee later informed Adams of a change in the date of the surgery, Adams informed him he had been laid off. Over the course of the next year, GHA discharged approximately one-third of its employees.

In challenging the trial court judgment, GHA presents three points of asserted error: 1) the evidence was legally and factually insufficient to support a finding that GHA violated article 8307c in discharging appellee; 2) the trial court erred in permitting appellee to present testimony of undisclosed expert witnesses; and 3) the trial court improperly calculated prejudgment interest.

■ In discussing GHA's first point, we must note the well established standards by which we determine the legal or factual sufficiency of the evidence to support the verdict. In reviewing a no evidence, or legal sufficiency challenge, we must review the record to determine whether there is more than a scintilla of evidence to support the finding.

2. Although at the time of these events the relevant statutory provisions were referred to as "workmen's" compensation, we use the current and more politically correct designation of "workers" compensation.

3. We note that GHA uses the terms "layoff" and "termination [of employment]" without offering any explicit distinction between the two terms. Black's Law Dictionary 888 (6th ed. 1990) defines the term "layoff" as a termination, either temporary or permanent. However, from the context in which the terms are used, we will assume the term "layoff" is used to mean a temporary period of dismissal from work. *See, e.g., Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 286–87, 66 S.Ct. 1105, 1111–12, 90 L.Ed. 1230 (1946); *CBS, Inc. v. International Photographers,* 603 F.2d 1061, 1063 (2nd Cir. 1979).

*Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). If such evidence exists, the finding is not legally insufficient. *Stedman v. Georgetown S. & L. Ass'n,* 595 S.W.2d 486, 438 (Tex.1979). Evidence is merely a scintilla when it is so weak as to create a mere surmise or suspicion of a fact. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 755 (Tex.1970).

■ When reviewing the factual sufficiency of the evidence, we are required to examine the entire record to determine whether there is some probative evidence to support the finding and, if there is, we must further determine whether the evidence supporting the finding is so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Garza,* 395 S.W.2d at 823; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Hydrocarbon Management, Inc. v. Tracker Exploration, Inc.,* 861 S.W.2d 427, 431–32 (Tex.App.—Amarillo 1993, no writ); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied).

■ Because circumstantial evidence may be sufficient to support a finding that an employee's workers' compensation claim was a factor in his discharge, *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied), GHA concedes that appellee's evidence is sufficient to "raise the inference that there is a casual link" between his workers' compensation claim and his discharge. The evidence supporting this inference is that appellee's layoff came shortly after his initial efforts to collect workers' compensation benefits, the decision was made by a person with knowledge of his workers' compensation claim, and there was some evidence of a negative attitude toward his injured condition.

■ However, GHA argues that, under the evidence, it is entitled to the benefit of the rule that uniform application of non-discriminatory policy does not violate article 8307c, even when the policy's application neg-

atively affected an employee who has made a claim for workers' compensation benefits. *See Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313 (Tex.1994); *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, no writ); *Swearingen v. Owens–Corning Fiberglas Corp.,* 968 F.2d 559, 564 (5th Cir.1992). GHA, however, failed to obtain or request a jury finding on this defense. That being so, if its evidence failed to conclusively establish this defense, the defense was waived. *Akin v. Dahl,* 661 S.W.2d 911, 913 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); Tex.R.Civ.P. 279.

■ The only evidence that such a policy existed came from the testimony of GHA's employees Royce Adams and Gene Daily. No documents setting out the policy were introduced into evidence. According to Adams and Daily, the policy for selecting employees for layoffs was as follows: those employees who were "unavailable for work" at the time of the layoff, regardless of reason, were the first ones selected; second, those employees who had been temporarily assigned to the department making the layoffs were chosen; lastly, the remaining employees to be laid off were selected by reverse seniority.[4] It was also established that employees were not informed of the existence of such a policy. It is axiomatic that the jury, as factfinder, is free to accept or reject any or all of the testimony of any witness. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Bayou Terrace Inv. Corp. v. Lyles,* 881 S.W.2d 810, 813 (Tex.App.—Houston [1st Dist.] 1994, no writ). *See also Texas Workers Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 535 (Tex. 1995) (Spector, J., concurring in part, dissenting in part).

In asserting it is entitled to the benefit of the rule, GHA primarily relies upon the cases of *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d at 313; *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, no writ); *Swearingen v. Owens–Corning Fiberglas Corp.,* 968 F.2d at 559;

---

**4.** Seniority has a special meaning at GHA in that it is an employee's length of service with his current department which determines seniority

for layoffs rather than length of service with the company.

and *Parham v. Carrier Corp.*, 9 F.3rd 383 (5th Cir.1993). However, the evidence in this case is in contrast to that produced in those cases. In *Carrozza, Swearingen* and *Parham*, the policies relied upon by the defendants were embodied in collective bargaining agreements. In *Palmer*, the question involved an absence control policy included in a union contract. In this case, because of the absence of any written evidence of the existence of a uniform, non-discriminatory discharge policy and the somewhat equivocal testimony concerning the details[5] of the asserted policy, the record is not sufficient to conclusively establish the defense. Consequently, GHA's failure to obtain a jury finding as to an element of this defense waives the right to rely upon the defense. GHA's first point is overruled.

■ In its second point, GHA assigns error to the trial court's failure to exclude the testimony of two of appellee's expert witnesses: Melissa Duhon, a psychologist who treated appellee, and C. Richard Waits, an economist. GHA contends that because of appellee's incomplete answers to interrogatories in this respect, Rule 215(5) of the Texas Rules of Civil Procedure prescribes an automatic sanction of exclusion of these witnesses' testimony.

In its first set of interrogatories, GHA requested the identity of each expert witness and:

(a) The subject matter upon which expert witness is expected to testify; and

(b) The substance of the facts and opinions to which the expert witness is expected to testify and a summary of the grounds for each opinion.

Appellee's initial response included the name and address of Dr. Duhon and the statement that she would "verify the mental condition I was in at the time I first went to see her until the present time." On November 4, 1991, GHA filed a motion to compel discovery asserting that this answer was an insufficient response to part (b) of its interrogatory. On November 8, 1991, appellee filed his response to the motion, stating GHA's motion was the first notice he had of a claim that his response was inadequate and attaching approximately twenty-one pages of Dr. Duhon's notes. The trial jury in this case was sworn on October 13, 1993. The record before us does not show that the trial court ever ruled on GHA's motion to compel. Inasmuch as GHA failed to obtain a ruling upon its motion, it may not assert error predicated upon the motion. Tex.R.App.P. 52(a).

GHA also contends that its complaint was preserved by its pretrial motion in limine. However, no such motion appears in the record,[6] nor have we been referred to or discovered any ruling by the trial court upon such motion. Because the record fails to show any pretrial ruling concerning the discovery dispute, GHA's complaint is waived. *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex.1993).

■ With reference to Dr. Waits, appellee provided a supplemental response on January 22, 1992, identifying Dr. Waits and stating that he "is expected to testify on the value of [p]laintiff's lost earnings and other company benefits." On June 4, 1992, appellee provided a supplemental response stating Dr. Waits was expected to testify as to "the economic loss of the plaintiff" and attached a worksheet listing the amount of lost wages and benefits as to which Dr. Waits would testify.

Rule 166b(6)(b) of the Texas Rules of Civil Procedure provides "when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry," the party must supplement its response "to include the name, address and telephone number of the expert witness and the substance of the [expert's] testimony." GHA's complaint is that when appellee failed to present a summary of Dr. Waits's testimony in his supple-

---

5. For example, the testimony of Adams and Daily did not establish how long one must be absent from work to be "unavailable." There was evidence that some short term absences due to illness did not make one "unavailable" under the asserted policy.

6. There is, however, a response to GHA's motion in limine.

mental response, by virtue of Rule 215(5), exclusion of such testimony was automatic.

In support of its position that the trial court reversibly erred in failing to exclude Waits's testimony, GHA relies upon the cases of *Sharp v. Broadway National Bank,* 784 S.W.2d 669, 672 (Tex.1990); *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); and *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987). However, perusal of the *Sharp* and *Youngblood* cases reveals the party seeking to present the expert testimony wholly failed to identify the expert in any response. That being so, and relying upon the plain language of Rule 166b(6)(b),[7] the courts excluded the proffered testimony. In *Boothe,* the defendant's failure to disclose the address of his witness when he knew her address required the exclusion of that witness's testimony. In explaining why that was the result, the appellate court explicated that under Rule 166b(6)(a), the parties have an affirmative duty to supplement their answers if an answer "is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading."

■ In this case, after receiving appellee's supplemental response of June 4, 1992, as far as the record before us shows, GHA failed to make any objection concerning the completeness of the response.[8] Without any evidence of a complaint from GHA in the sixteen-month period intervening between June 4, 1992, and the commencement of trial in October 1993, the trial court could easily have concluded that GHA had no complaint about the response. Although GHA contends the exclusion is automatic and does not require an objection, we disagree. It is the established rule that the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct. *Remington Arms Co., Inc.,* 850 S.W.2d at 170. Additionally, and significantly, in each of the cases GHA relies upon, there was a timely objection to the receipt of

the testimony. Here, GHA failed to object when Dr. Waits's testimony was presented at trial. Without a timely trial objection, GHA waived any error in admitting the testimony. Tex.R.App.P. 52(a). For each and all of the above reasons, we overrule GHA's second point.

■ In its third point, GHA asserts the trial court erred in calculating prejudgment interest. We agree. Citing only the statute, GHA posits the determination of prejudgment interest in this case is governed by article 5069–1.05 of the Texas Revised Civil Statutes. Section 6(a) of that article provides that "[j]udgments in wrongful death, personal injury and property damage cases must include prejudgment interest." Tex. Rev.Civ.Stat.Ann. art. 5069–1.05 § 6(a) (Vernon Supp.1995). Appellee, however, urges that a claim of this nature under article 8307c is one for economic damages governed by the rule promulgated in *Cavnar v. Quality Control Parking,* 696 S.W.2d 549, 554 (Tex.1985). In that case, the court held that "a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages that *have accrued by the time of judgment.*" *Id.* (emphasis in original). Some courts have held that damages under article 8307c are governed by the rule in *Cavnar, Pacesetter Corp. v. Barrickman,* 885 S.W.2d 256, 263 (Tex.App.—Tyler 1994, no writ); *City of La Porte v. Prince,* 851 S.W.2d 876, 885 (Tex.App.—Waco 1993, writ granted), while at least one court has held such damages to be for personal injury and therefore governed by article 5069–1.05 § 6. *See Acme Boot Co., Inc. v. Montenegro,* 862 S.W.2d 806, 811 (Tex.App.—El Paso 1993, no writ).

■ Determination of this point requires an examination of the damages awarded by the jury. Initially, we note that prejudgment interest may not be awarded on exemplary damages. *Ellis Co. State Bank v. Keever,* 888 S.W.2d 790, 797 (Tex.1994); *Vail v. Texas Farm Bureau Mutual Insurance Co.,* 754

---

7. In the *Youngblood* case, the court referred to this section of the rule by its former number, 166b(5).

8. It is suggested that GHA complained of this asserted error in its motion in limine. However, as we noted above, that motion is not in the record before us.

S.W.2d 129, 137 (Tex.1988); *Cavnar*, 696 S.W.2d at 555; Tex.Civ.Prac. & Rem.Code Ann. § 41.006 (Vernon Supp.1995). In asking the jury to determine appellee's actual damages, the trial court instructed them to consider four elements: 1) past lost wages and benefits; 2) future lost wages and benefits; 3) past mental anguish; and 4) future mental anguish. The jury was not asked to apportion its determination of damages among those four elements. Parenthetically, damages for past lost wages and benefits are purely economic damages upon which the award of prejudgment interest would be governed by the *Cavnar* decision. Because they are also economic damages, prejudgment interest and benefits in the future may not be recovered because they are not accrued by the time of judgment as required by *Cavnar*.

In its appeal, GHA does not challenge the award of any prejudgment interest that may have been awarded on future lost wages or benefits; rather, it contends only that prejudgment interest should have been calculated as provided by section 6(a) of article 5069–1.05. That contention limits us to a decision as to how any prejudgment interest allowable can be awarded on the unsegregated damage award made by the jury.

■ Although we do not adopt the holding of the El Paso Court of Appeals in *Acme Boot* that all damages recovered by virtue of article 8307c are personal injury damages, we are of the opinion that if appellee wanted to benefit from the prejudgment calculations provided for in *Cavnar*, it was his obligation to have submitted a damage question in which the various damage elements were segregated. Because those elements were not segregated, for the purposes of this case, we hold that prejudgment simple interest on the damage award is to be calculated as provided in article 5069–1.05, section 6(g).[9] We also find that the court's holding in *Cav-*

*nar*, that the failure to segregate damages prevents the recovery of prejudgment interest, is inapplicable here because each of the elements permit recovery of at least simple interest except for future economic damages and, as we noted, GHA failed to raise that question on this appeal.

Applying the interest calculation provided in article 5069–1.05, § 6(g) to the actual damages award of $124,991 for the period of May 7, 1991 through November 15, 1993, we find the trial court should have awarded prejudgment interest in the amount of $31,607.31.[10]

Accordingly, finding error in that part of the trial court's judgment awarding prejudgment interest, we reform the trial court judgment to reflect the amount of prejudgment interest as $31,607.31. As reformed, the judgment is affirmed. *See* Tex.R.App.P. 80(b), 82.

QUINN, J., concurring.

QUINN, Justice, concurring.

I fully concur in the majority's opinion and disposition of points two and three. However, I specially concur in its disposition of point one.

In addressing the retaliatory discharge claim recognized under article 8307c of the Texas Revised Civil Statutes,[1] Gifford Hill American, Inc. invoked comparison with the *McDonnell Douglas* shifting burden test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In doing so, it admitted that Paul Whittington's evidence "raised the inference that there ... [was] a casual link" between his discharge and his workers compensation claim. The admission satisfied the causative nexus required under article 8307c. *See Parham v. Carrier Corp.*, 9 F.3d 383, 386 (5th Cir.1993) (holding that the worker's compensation

9. We disagree with appellee's argument that the "simple interest" provision in section 6 of the article includes annual compounding. Where the legislature has intended interest to be compounded annually, it has explicitly expressed that intent. *See, e.g.,* Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 3(a) (Vernon Supp.1995).

10. The period from May 7, 1991 through November 15, 1993 amounts to 923 days or 2.5288

years. Applying the statutory interest rate of ten per cent per annum results in a total interest percentage of 25.288. Applying this interest to the damage figure of $124,991.00 results in the interest figure of $31,607.31.

1. The provision was repealed and replaced in 1993 by § 451.001 of the Texas Labor Code.

claim need not be the sole cause but simply a determining factor); *Acme Boot Co. v. Montenegro,* 862 S.W.2d 806, 808 (Tex.App.—El Paso 1993, no writ) (holding proof that the worker's compensation claim "contributed" to the adverse employment decision sufficient causation). But for it, I would have respectfully concluded that the evidence was both legally and factually insufficient to establish anything other than Gifford Hill's desire to enhance employee safety and dislike for employee injuries. Moreover, from neither of those stimuli alone could one reasonably infer retaliation as contemplated by article 8307c. *Parham v. Carrier Corp.,* 9 F.3d at 387–88.