**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-5038

LYNN PARHAM, ET AL.,

Plaintiffs,

LYNN PARHAM,

Plaintiff-Appellee,

versus

CARRIER CORPORATION,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(December 7, 1993)

Before POLITZ, Chief Judge, WIENER, Circuit Judge, and LITTLE,[*]
District Judge.

WIENER, Circuit Judge:

Defendant-Appellant Carrier Corporation appeals an adverse
judgment rendered against it pursuant to a jury verdict favorable
to Plaintiff-Appellee Lynn Parham, a former Carrier employee, in
his suit claiming retaliatory discharge, breach of applicable
collective bargaining agreements, and breach of an oral agreement.
We reverse and render judgment for Carrier.

---

[*] District Judge of the Western District of Louisiana,
sitting by designation.

## I

## FACTS AND PROCEEDINGS

Parham was employed at Carrier's air conditioner manufacturing plant in Tyler, Texas. The Sheet Metal Workers' International Association (the Union) has been the sole and exclusive bargaining agent for all employees at this plant since 1971. In 1986, Carrier and the Union entered into a collective bargaining agreement (1986 CBA), that was to expire in June 1989.

The 1986 CBA permitted employees with disabilities caused by illness or job-related injuries to take unpaid leaves of absence for the duration of such disabilities. Although Carrier did not continue to pay employees' salaries during such indefinite leaves of absence, it did continue to provide for their medical insurance coverage.

While at work on January 15, 1988, Parham broke his leg when he fell off a loading dock and into a trash compactor. After the accident, Parham took an indefinite medical leave of absence. On March 17, 1989, Parham initiated a workers' compensation claim, which was settled in August of 1989 for $19,000.

Meanwhile, on June 4, 1989, a new CBA (1989 CBA) was implemented to replace the 1986 CBA, which had expired at the end of its three-year term. Significantly, although the 1989 CBA broadened the scope of carrier's disability leave program by permitting leaves of absence even for non-job related injuries, it placed a 24-month cap on all unpaid leaves of absence, job related or not. Employees with five years seniority at the onset of

2

disability could secure an additional six months of leave if they could demonstrate a reasonable expectation of being able to return to work within that additional period.

On January 15, 1990, Parham's leave of absence reached the 24-month mark. He was still on that leave approximately five months later when, on June 21, 1990, Carrier mailed him a letter which stated that he was being terminated pursuant to the disability leave provisions of the 1989 CBA. This notice was sent 29 months after Parham began his leave of absence, 15 months after he filed his workers' compensation claim, and 10 months after he settled that claim.

The June 21st letter also reiterated the new rule of the 1989 CBA that any employee who was on leave of absence and who had over five years seniority at the beginning of his leave could seek a six-month extension of the 24-month leave of absence period. The letter also invited Parham to contact Carrier's human resource director if he had any questions. Carrier notes that it gratuitously allowed Parham six months following his receipt of the letter to obtain a full medical release, but that he was unable to do so.

After receiving that letter, Parham spoke with his Union representative and with Carrier's human resource director, but never sought a six-month extension and never secured a full medical release, the latter being a prerequisite to any similarly situated employee's returning to work at Carrier. Further, Parham never attempted to use the grievance procedures required by the CBAs.

3

Rather, he chose to file the instant suit, alleging that (1) he was fired in retaliation for pursuing workers' compensation benefits, in violation of Tex. Rev. Civ. Stat. Ann. article 8307c, (2) his firing violated the terms of the CBAs,[1] and (3) his firing violated the terms of his oral contract with Carrier.

Carrier moved for summary judgment, arguing that Parham's claims were preempted by the Labor Management Relations Act, but the district court denied Carrier's motion. Parham's suit was tried before a jury, which found for Parham on all three of his claims but awarded him no damages on his claim of breach of an oral contract. The district court entered judgment for Parham on the jury verdict in the amount of $276,714. Carrier timely appealed the two claims that resulted in damage awards: retaliatory discharge and breach of the 1986 and 1989 CBAs.

## II

### ANALYSIS

A. Retaliatory Discharge

The jury found that Carrier fired Parham in retaliation for filing a workers' compensation claim, thereby violating the Texas Workers' Compensation Act. It awarded Parham damages for lost wages and benefits, past and future, and punitive damages. On appeal, Carrier argues that Parham's state law retaliatory discharge claim is preempted by section 301 of the Labor Management Relations Act (LMRA) and that there was insufficient evidence to

---

[1] These claims may be fairly characterized as breach of contract claims.

4

conclude that Carrier terminated Parham in retaliation for filing a workers' compensation claim.  Carrier thus asks us to reverse a jury verdict, an action that we take but rarely.

1.  <u>Sufficiency of the Evidence</u>

"On appeal, this court employs the same standard that the district court used in ruling on the defendant's motions."[2]  That standard was set forth memorably in <u>Boeing Co. v. Shipman</u>:

> [T]he Court should consider all of the evidence))not just the evidence which [sic] supports the non-mover's case))but in the light and with all reasonable inferences most favorable to the party opposed to the motion.  If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.  On the other hand, if there is substantial evidence opposed to such motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied ....  A mere scintilla of evidence is insufficient to present a question for the jury ....  There must be a conflict in substantial evidence to create a jury question.[3]

Parham based his retaliatory discharge claim on article 8307c of the Texas Workers' Compensation Act, which reads in pertinent part:

> No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be

---

[2] <u>Boggan v. Data Systems Network Corp.</u>, 969 F.2d 149, 152 (5th Cir. 1992)(quoting <u>Fruge v. Penrod Drilling Co.</u>, 918 F.2d 1163, 1165-66 (5th Cir. 1990).

[3] <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969)(en banc); <u>accord</u> <u>Turner v. Upton County</u>, 967 F.2d 181, 184 (5th Cir. 1992); <u>Normand v. Research Institute of America, Inc.</u>, 927 F.2d 857, 859 (5th Cir. 1991).

instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act or has testified or is about to testify in such proceeding.[4]

In pursuing a claim under article 8307c, the plaintiff has the burden of establishing a causal nexus between his filing of a workers' compensation claim and his discharge by his employer.[5] The plaintiff need not prove that his quest for workers' compensation was the sole reason for his discharge, but he must establish that it was a determining factor.[6] In a federal case involving a state law claim, state law determines the kind of evidence that may be produced to support a verdict,[7] but federal law establishes the quantum of evidence needed to support a verdict.[8]

Parham notes correctly that in Texas "[c]ircumstantial evidence and reasonable inferences from the evidence may provide adequate support for the jury's affirmative finding" in a wrongful termination case.[9] But even though proof in such a case need not

---

[4] TEX. REV. CIV. STAT. ANN. art. 8307c, § 1 (Vernon Supp. 1992).

[5] Jones v. Roadway Express, Inc., 931 F.2d 1086, 1090 (5th Cir. 1991).

[6] Id.

[7] Ayres v. Sears, Roebuck & Co., 789 F.2d 1173, 1175 (5th Cir. 1986); McCandless v. Beech Aircraft Corp., 779 F.2d 220, 223 (5th cir. 1985), vacated on other grounds, 798 F.2d 163 (5th Cir. 1986).

[8] Atchison, T. & S. F. Ry. v. Sherwin-Williams Co., 963 F.2d 746, 749 (5th Cir. 1992).

[9] Paragon Hotel Corp. v. Ramirez, 783 S.W.2d 654, 658 (Tex. App.))El Paso, 1989, writ denied).

be direct, it must be sufficient. Here we conclude that Parham has failed to adduce sufficient evidence of a causal nexus between his filing of a workers' compensation claim and his termination by Carrier.

Parham claims to have offered evidence that (a) Carrier officials knew he had filed a workers' compensation claim, (b) Carrier's motive for firing him was to reduce compensation claims, (c) Carrier retaliated against others who had filed compensation claims, (d) Carrier's absence control policy was not neutrally applied, and (e) he was physically qualified to return to work at Carrier. We find all of these evidentiary assertions to be either patently false or based on distortions of the evidence.

### a. Carrier's Knowledge

Parham points to no evidence that anyone involved in his termination had actual knowledge of his compensation claim. Rather, he relies on the willingness of Carrier officials to acknowledge the obvious inference that employees who have been on leave for 24 months are likely to have filed compensation claims. This inference is doubtless correct, but such a generalized inference is no substitute for hard evidence that those involved in a particular discharge actually knew that the fired employee had filed a compensation claim. Neither does such a generalized inference in any way suggest a retaliatory motive.

Parham's reliance on two Texas cases for the proposition that an employer's knowledge that an employee had filed a workers' compensation claim is evidence of a retaliatory discharge is

7

misplaced.[10]  In each case there was considerable additional evidence of retaliatory animus; Parham can point to none.  Also, in the cases cited by Parham, the employers were specifically aware of compensation claims filed by the employees who later filed suit;[11] Parham does nothing more than ask us to infer that Carrier knew of his compensation claim simply because he had been out on disability leave for over two years.  We decline to take such a leap of logic.

In the context of this case, the mere possibility that Carrier officials might infer from Parham's leave status that he had filed a compensation claim is not probative of retaliatory discharge.  We can discern no nexus between that universal truism and the retaliatory discharge alleged by Parham.

### b. Reduction of Workers' Compensation Claims

Parham next argues that Carrier's motive for firing employees who had been on leave for 24 months was to reduce compensation claims.  But a generalized desire to reduce compensation claims))in itself))is not impermissible.  What is impermissible is actively discouraging the filing of compensation claims.  Under the right circumstances, such discouragement may be evidence of retaliatory discharge.[12]  But no such circumstances are present here.  The only support that Parham musters to suggest that Carrier discouraged compensation claims is an isolated statement in the deposition of

---

[10] Id., and Murray Corp. of Maryland v. Brooks, 600 S.W.2d 897, 903 (Tex. Civ. App.))Tyler 1980, writ ref'd n.r.e.).

[11] Id.

[12] Paragon, 783 S.W.2d at 658.

8

a Carrier representative, Nathaniel Ellison, who said, "We were trying to eliminate the number of comp claims by improving our safety." By parroting the first clause of this statement ("We were trying to eliminate the number of comp claims")))both in his brief and at oral argument))while de-emphasizing or omitting the latter clause ("by improving our safety"), Parham attempts to suggest that Carrier was engaged in some sort of persecution of employees who filed workers' compensation claims. That suggestion is ludicrous: improving plant safety to reduce the number of employee injuries is a very different thing from firing employees in retaliation for filing compensation claims.[13]

  c.   Discharge of Other Compensation Claimants

By repeating the same quotation that failed to support his last argument, Parham attempts to support his charge that Carrier retaliated against other employees who had pursued workers' compensation claims. But again, Carrier's desire to reduce "the number of comp claims by improving . . . safety," is just not evidence of retaliation by Carrier against employees who had filed compensation claims.

A pattern of firing employees who have filed compensation claims could be probative of retaliatory discharge,[14] but not when all the employees have been discharged pursuant to the same leave

---

[13] Carrier also rightly points out that Mr. Ellison's statement was made in response to a question that had nothing to do with the new CBA termination policy, and that he denied that the new policy was at all linked to compensation claims.

[14] See, e.g., Chemical Express Carriers, Inc. v. Pina, 819 S.W..2d 585, 590 (Tex. App.))El Paso 1991, writ denied).

9

of absence policy. Here the pattern reflects application of the policy, not some invidious retaliatory motive. If Carrier had discharged twenty employees for a variety of proffered reasons, and all of them had previously filed compensation claims, we might suspect an ulterior motive. But, as all Carrier's employees on disability leave were discharged pursuant to the same written policy, the evidence demonstrates nothing more than that Carrier was applying the terms of the 1989 CBA as it understood them.[15]

### d. Inconsistent Enforcement of Leave Policy

Parham next argues that Carrier's policy of firing employees who had been on leave for more than 24 months was not neutrally applied. In support of his claim Parham states: "In our case, Carrier admits this policy was not neutrally applied. Instead, it was implemented to eliminate workers' compensation claims, targeted at those who had filed such claims, and, in fact, applied only to those who had filed such claims." Parham favors us with no references to the record to substantiate this statement, and we can find none.

If Carrier did fail to apply the 1989 CBA neutrally, it failed in a way that benefitted Parham. The 1989 CBA grants employees only twenty-four months of disability leave. But Parham was given notice of termination approximately twenty-nine (29) months after he began his leave of absence. He therefore received a five-month

---

[15] Parham does not dispute that each of twenty discharged people had been on leave for more than 24 months before they were fired. Neither does he respond to Carrier's claim that over 100 of its 600 employees had previously filed compensation claims without being terminated by Carrier.

10

moratorium.[16]    Moreover, after Parham received the termination letter he was afforded an additional six months before his termination became final in which to secure a full-duty release from a physician.  This, coupled with his five-month moratorium, gave him a leave of absence eleven months longer than he was entitled to under the literal terms of the 1989 CBA, as understood by the parties that negotiated the agreement.[17]  Thus, even if Carrier did fail to apply its new policy rigidly and uniformly, such a flexible and inconsistent application of the 1989 CBA actually inured to Parham's benefit; he cannot be heard to complain about that.

### e.    Physically Qualified to Return to Work

Finally, Parham claims to have established that he could have returned to work at Carrier.  In support of this claim, he points only to his own self-serving testimony that he obtained similar employment at McDonald's after he was fired from Carrier, and that he believed he could do everything physically necessary to work at Carrier.  In response, Carrier points to several critical pieces of

---

[16] An additional six months of leave are granted to injured "employees with over five (5) years seniority . . . where there is a reasonable expectation that the employee will be able to return to work within this . . . period."  Based on Parham's inability to secure a full-duty medical release to return to work at Carrier, however, the additional five months of leave granted Parham must be regarded as a windfall.  He got them without having to demonstrate a reasonable expectation that he would be able to return to work, a demonstration that he was unable to make.

[17] Parham did not respond to evidence that another employee was allowed to return to work at Carrier because he was able to secure a full-duty medical release within the six-month extension provided by Carrier.

11

evidence))evidence that Parham conveniently fails to address.

First, Parham was never able to obtain the requisite physician's full-duty release to return to work, even as of the time of trial.[18] Second, while he was on leave, Parham actively sought to be classified as permanently and completely disabled: he probably should be estopped now from claiming to be capable of full-duty employment.[19] Third, Parham's own testimony reflects that, although his job at McDonald's is similar to his job at Carrier, it is less strenuous. And, finally, Parham admitted that he still suffered from some disability.[20] Parham's bald assertion that he could have returned to work at Carrier thus suffers from a fatal defect: it flies in the face of all objective evidence, and is supported by none.

In summary, Parham failed totally to satisfy his burden of establishing a causal nexus, as required under Article 8307c, between his filing a workers' compensation claim and his discharge.[21] His evidence is insufficient as a matter of law to

---

[18] The requirement that employees who have been on unpaid leaves of absence secure full-duty medical releases before returning to work at Carrier is contained in both the 1986 and the 1989 CBAs, as well as several earlier CBAs.

[19] Alternatively, perhaps his earlier claim of permanent disability was fraudulent.

[20] During questioning Parham admitted, "I can't lift like I used to lift."

[21] Jones v. Roadway Express, Inc., 931 F.2d 1086, 1090 (5th Cir. 1991); accord Swearingen v. Owens-Corning Fiberglas Corp., 968 F.2d 559, 562 (5th Cir. 1992).

support his claim of retaliatory discharge. To the extent that Parham's evidence tends to show anything, it is that Carrier terminated Parham in accordance with a neutrally-applied absence control policy, an action that we have expressly held not to violate article 8307c.[22] We conclude that the facts and inferences favor Carrier to such an overwhelming extent that an impartial and reasonable fact-finder))fully apprised of all relevant information))could not reach a verdict for Parham. We are therefore constrained to reverse the jury's verdict and render a take-nothing judgment against Parham on his retaliatory discharge claim.

2. Preemption

Carrier also argues that Parham's retaliatory discharge claim is preempted by section 301 of the Labor Management Relations Act (LMRA). As we hold Parham's evidence to be insufficient as a matter of law to support a finding of retaliatory discharge, we need not consider whether Parham's retaliatory discharge claim is preempted by the LMRA.

B. Breach of Contract

At trial Parham argued that his discharge by Carrier violated the terms of (1) the 1986 CBA, (2) the 1989 CBA, and (3) an oral contract that he purportedly made with Carrier. The jury found for

---

[22] Swearingen v. Owens-Corning Fiberglas Corp., 968 F.2d 563-64. Parham argues that Swearingen does not apply because it was a summary judgment case. The procedural posture of Swearingen, however, cuts against Parham: if the two cases are factually similar, and the plaintiff in Swearingen was unable even to defeat a motion for summary judgment, surely Parham cannot marshal enough evidence to justly win a verdict.

13

Parham on all three breach of contract claims, but awarded no damages for breach of the supposed oral contract. As Carrier understandably does not appeal the verdict on the breach of oral contract claim, we do not address it.

In its appeal of Parham's breach of CBA claims, Carrier argues that they are preempted by section 301 of the LMRA, which reads as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.[23]

State law causes of action for violation of a collective bargaining agreement))essentially breach of contract claims))are entirely displaced by section 301.[24] Additionally, when a state tort claim cannot be resolved without interpreting a provision of a collective bargaining agreement, the application of state law is preempted, and federal law must be employed to resolve the dispute.[25] Only when a state claim sounding in tort can be resolved without having to interpret a collective bargaining agreement is otherwise

---

[23] NATIONAL LABOR RELATIONS ACT § 301, 29 U.S.C. § 185(a).

[24] Medrano v. Excel Corp., 985 F.2d 230, 232 (5th Cir. 1993)(citing United Steelworkers v. Rawson, 495 U.S. 362, 368, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990)); accord Franchise Tax Bd. v. Laborers Vacation Trust, 463 U.S. 1, 23, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)("the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'").

[25] Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988).

14

applicable state law not preempted.[26]

Parham's claims that Carrier breached the 1986 and 1989 CBAs are))by definition))state law causes of action that allege violations of collective bargaining agreements. As such, they are automatically preempted by section 301.[27] Thus, we need not consider whether Parham's breach of contract claims require interpretation of the CBAs: as Parham's claims are breach of CBA claims, preemption is automatic.[28] Consequently, they must be resolved by resorting to federal rather than state law.[29] We proceed to do so.

In the section 301 context, federal law ordinarily requires a

--------

[26] Medrano, 985 F.2d at 232 (quoting Lingle, 486 U.S. at 410).

[27] See supra note 27.

[28] Id. Even if we were required to undertake such an analysis, however, it is clear that an interpretation of both CBAs' provisions would be absolutely necessary to determine whether Carrier violated those agreements, a point forthrightly conceded by Parham's counsel at oral argument, and approved by the district court in its Memorandum Opinion. Parham v. Carrier Corp., No. 90-CV-319, Memorandum Opinion at 5-6 (E.D. Tex., Jan. 14, 1992)(unpublished). At trial Parham claimed that Carrier violated "vested rights" conferred upon him by the 1986 CBA when it negotiated the new, 1989 CBA. Obviously, to decide the merits of Parham's claim, a court would have to interpret the 1986 CBA to determine whether that CBA was intended to confer vested rights upon Parham and other employees. Parham also argued that Carrier violated the 1989 CBA by applying its leave of absence terms retroactively. A court would clearly have to interpret the 1989 CBA to determine whether its leave of absence provisions were intended to apply retroactively. Thus, interpretation of both CBAs would be essential to resolving Parham's claims, even if they were not automatically preempted as breach of CBA claims, but were somehow deemed to be delictual or otherwise non-contractual in nature.

[29] United Steelworkers v. Rawson, 495 U.S. 362, 368, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990).

plaintiff to exhaust grievance procedures established in a collective bargaining agreement before filing a claim in court.[30] Parham did not even institute))much less exhaust))grievance procedures available through the CBAs before he initiated the instant lawsuit.  The jury, however, excused Parham's failure to use the Union's grievance procedures, finding "that it would have been futile [for Parham] to have used the grievance procedure to contest his discharge from . . . Carrier . . . ."[31]

Although a disgruntled employee may bring a suit without first exhausting available grievance procedures if exhaustion of those remedies would be futile,[32] such an employee may not simply assert that his use of grievance procedures would have been futile:  he must ordinarily at least have attempted to use them.[33]  Parham cites Glover v. St. Louis-San Francisco Railway Co. for the proposition that employees need not even attempt to use available grievance procedures if they would have to submit their concerns "to a group which is in large part chosen by the [defendants] against whom

_____

[30] Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 205 n.1, 220-21, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985).

[31] Guided by comments made in the district court's Memorandum Opinion Denying Carrier's Motion for Summary Judgment, Parham amended his complaint to include the argument that it would have been futile to use available grievance procedures.

[32] Rabalais v. Dresser Indus., Inc., 566 F.2d 518, 519 (5th Cir. 1978).

[33] Vaca v. Sipes, 386 U.S. 171, 184-85, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); accord Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965).

16

their real complaint is made."[34]  But Glover is distinguishable from the instant case and does not absolve Parham of his failure even to attempt to invoke the grievance procedures available to him, much less exhaust them.

The factual contours of Glover differ materially from the instant case.  In Glover the plaintiffs were blacks who believed))probably justifiably))that the same discrimination that allegedly impeded their promotions would prevent their receiving fair arbitration of their complaints, thereby rendering grievance procedures futile.[35]  In that factual context, the Supreme Court rejected the requirement that "employees alleging racial discrimination should be required to submit their controversy to 'a group which is in large part chosen by the [defendants] against whom their real complaint is made.'"[36]  In contrast, there is no evidence that any racial animus pollutes the instant case.  Neither is there evidence that the representatives of Parham's Union who would participate in the grievance procedures would be selected by Carrier, which is the real target of Parham's complaint.

By urging us to sever the Court's language in Glover from the secure moorings of its factual context of racial discrimination, Parham would have us adopt a rule of law that would allow an

---

[34] Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 330, 89 S. Ct. 548, 21 L. Ed. 2d 519 (1969)(citing Steele v. Louisville & Nashville Ry. Co., 323 U.S. 192, 206, 65 S. Ct. 226, 89 L. Ed. 173 (1944).

[35] See generally Glover, 393 U.S. 324.

[36] Id. (emphasis added).

17

employee to circumvent grievance procedures contained in an applicable CBA whenever his employer or his union have significant involvement in the grievance process. We decline the invitation thus to set adrift the requirement that employees exhaust available grievance procedures. "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes . . .," and we will not allow congressional will to be so easily thwarted.[37]

The futility exception requires exactly that))futility. Before a plaintiff may safely disdain available grievance procedures, his invocation of those procedures must truly be futile: not annoying, bureaucratic, insensitive, or unpromising, but futile. An employee has the burden of producing some evidence that resort to available grievance procedures would in fact be futile: his mere subjective belief or conclusionary assertion will not suffice.[38]

More importantly, given the grievance procedures available under the 1989 CBA, the futility problem posed by Glover does not even arise in this case. The 1989 CBA provides that the Union may submit a controversy to a neutral arbitrator for binding resolution

_____

[37] Republic Steel v. Maddox, 379 U.S. 650, 653, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965).

[38] Vaca v. Sipes, 386 U.S. 171, 184-85, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967). Even in Glover the Court required the plaintiffs to produce evidence that they had attempted to exhaust contractual remedies; a requirement that was satisfied by plaintiffs' "repeated complaints to company and union officials," which the Court evidently believed to be tantamount to a plea for the resolution of their grievances. No comparable evidence supports Parham's claims. Glover, 393 U.S. at 331.

18

if the grievance is not satisfactorily settled, "thus removing any possibility of the futility problem present in <u>Glover</u>."[39]  Parham had no justification whatsoever for ignoring the grievance resolution machinery available to him.

Parham insists that filing a grievance would have been futile because his Union representative did not strongly encourage him to file one, or volunteer to file one for him.  That hardly proves futility.   This particular Union representative had helped negotiate the 1989 CBA and probably was simply expressing his opinion that Parham had no realistic claim because he was discharged pursuant to a lawfully negotiated CBA that both Carrier and Union officials evidently intended to apply retroactively. Thus, Parham introduced no objective evidence))none))for this claim; only his own self-serving testimony.

To recapitulate, we are unwilling to embrace a rule that would allow disgruntled employees to circumvent mandatory grievance procedures solely because they may subjectively believe, even in good faith, that resort to those procedures would be a hollow act. We hold that the jury's finding that it would have been futile for Parham to use available grievance procedures is based on essentially no evidence, and is insupportable as a matter of law. We therefore reverse the jury's finding excusing for futility Parham's failure to invoke those procedures, and we render judgment dismissing his breach of CBA claims.

---

[39] <u>Rabalais v. Dresser Indus., Inc.</u>, 566 F.2d 518, 519 (5th Cir. 1978).

19

C. <u>Damages</u>

As we reverse the jury's verdict and the district court's judgment, and hold for Carrier on both Parham's retaliatory discharge and breach of contract claims, we need not address in depth the legal and factual errors suffusing the jury's damage awards. We note in passing, however, that had we been required to reach the issue of damages, we almost certainly would have concluded that the jury's awards were factually and legally erroneous, as well as irreconcilably inconsistent.

**III**

**CONCLUSION**

Parham has failed to adduce any relevant, probative evidence to establish a causal nexus between his filing a workers' compensation claim and his termination by Carrier. As proof of such a nexus is essential to prevailing in an Article 8307c claim, we reverse the jury's verdict and render for Carrier on the issue of retaliatory discharge. Having thus determined that Parham's evidence of retaliatory discharge was insufficient as a matter of law, we need not))and therefore do not))consider whether his retaliatory discharge claim is preempted by section 301 of the LMRA.

Parham's breach of contract claims are, however, clearly preempted by section 301. Consequently, Parham had a duty at least to <u>attempt</u> to use the grievance procedures available to him. Based solely on his subjective belief in the futility of those procedures, however, Parham made no such attempt, choosing instead

20

to file a suit.  We find no probative evidence to support Parham's belief that resort to the grievance procedures available under the 1989 CBA would have been futile.  We therefore reverse the jury's finding of futility and its excusing Parham from the requirement that he at least attempt to use those procedures.  Consequently, we render a take-nothing judgment against Parham on his breach of collective bargaining agreement claims, for failure to invoke the grievance procedures required under the CBAs.

For the foregoing reasons, the jury's verdict and the district court's judgment awarding damages to Parham are in all respects REVERSED, and judgment is RENDERED for Carrier and against Parham, dismissing all of his claims with prejudice.