UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-20067
_____

ROSALINDA GUERRA; ARTHUR R. MARTINEZ,

Plaintiffs-Appellants,

and

DAVID R. NEWMAN,

Plaintiff,

versus

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; CWA LOCAL UNION 6132;

CWA DISTRICT 6; SOUTHWESTERN BELL TELEPHONE COMPANY

Defendants-Appellees,

and

CWA LOCAL UNION 6222,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-93-0557)
_____

June 14, 1996

Before BARKSDALE, DeMOSS and PARKER, Circuit Judges.

PER CURIAM:[*]

Rosalinda Guerra and Arthur R. Martinez, who were employees of

Southwestern Bell Telephone Company (SWBT) and members of

Communications Workers of America, AFL-CIO (the union), challenge

_____

[*]    Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

post-verdict judgments as a matter of law, which were based on rulings that Guerra was required, but failed, to exhaust administrative remedies, and that Martinez's claims were time-barred. We **AFFIRM**.

## I.

Guerra's employment with SWBT was terminated in mid-1990; Martinez's in early 1991. In February 1993, they filed this action with another against, *inter alia*, the union, their local, and SWBT. Although their separate claims were tried together, different facts underlie them.

Guerra claimed that the union and her local, among others, breached the duty of fair representation by their intentionally delayed and ineffectual handling of her grievance. After the jury found that the union had breached that duty, the district court granted it judgment as a matter of law, because Guerra had not exhausted administrative remedies and there was insufficient evidence of breach of the duty of fair representation.

Martinez claimed that SWBT terminated his employment without just cause under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that the union and his local, among others, breached the duty of fair representation. After the jury found against SWBT and the local, the district court granted judgment against Martinez's claims, concluding that, under the applicable six-month limitations period, they were time-barred.

## II.

2

Needless to say, judgments as a matter of law are reviewed *de novo*.

> In reviewing the district court's decision to grant a judgment as a matter of law, we use the same standard of review that guided the district court. We consider all the evidence with all reasonable inferences in the light most favorable to the party opposed to the motion. If the facts and the inferences point so strongly and overwhelmingly in favor of [the movant] that reasonable jurors could not arrive at a contrary verdict, then the motion was properly granted. If there is substantial evidence -- that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion -- then the motion should have been denied.

*Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 950-51 (5th Cir. 1994) (citations omitted), *cert. denied*, 115 S. Ct. 1110 (1995).

## A.

Guerra was informed on August 14, 1990, that SWBT was considering terminating her employment because of poor work performance. Later that day, she was fired for misconduct for removing documents claimed proprietary.

On the day that SWBT terminated her, Guerra filed a statement of occurrence with her local. Within three days, it contested her discharge by filing a grievance. And, it set a meeting with SWBT for early October for the first step of the grievance procedure.

At that meeting, the local's president argued for Guerra's reinstatement; afterwards, Guerra thanked her for her good presentation. SWBT denied the grievance at the close of the meeting.

Rather than proceed through the second and third step meetings, Guerra elected mediation, which entails bypassing the second step, appealing to the third step, and, if the grievance is denied, arranging mediation. (If mediation is unsuccessful, the employee then has 60 days to elect arbitration, as does an employee whose grievance is denied after the second and third step meetings.) Accordingly, the local promptly wrote a letter to Currie Hallford, union representative, requesting him to proceed to the third step of the grievance procedure and utilize mediation.

Upon Hallford's demand, SWBT agreed to mediate, but later informed him that it was unable to do so because Guerra had initiated an action at law. (Another district court dismissed this separate action, which pressed a Title VII claim against SWBT and a § 301 claim against it and the local, for lack of jurisdiction and failure to exhaust administrative remedies. Guerra appealed; but, as part of a later settlement with SWBT, discussed *infra*, she dismissed the appeal.)

Accordingly, by an early January 1991, letter to SWBT, Hallford withdrew the mediation request. He then set the third step meeting in Austin (Guerra's home) at the earliest possible date, considering the schedules of Guerra, the local officers, various company officers, and himself. But, Guerra relocated to Houston; upon her request, Hallford in early-January cancelled the Austin meeting and scheduled it for the end of April in Houston.

At that April meeting, SWBT again denied the grievance. Guerra claims that Hallford spent inadequate time preparing her

case for the meeting, resulting in the denial. Hallford testified, however, that he had a lengthy telephone conversation with Guerra before she left Austin, reviewed the grievance file before going to Houston, met with Guerra for 30 or 45 minutes prior to the grievance meeting, listed six or eight questions Guerra wanted asked and asked them at the meeting, argued that SWBT did not have just cause to discharge Guerra, and gave her the opportunity to speak at the end of the meeting, at which time she said she had nothing to add. Hallford testified that he presented every consideration and tried earnestly to get Guerra reinstated.

Hallford advised Guerra by an early May letter that, based on his review, he could not recommend to the union that her discharge be submitted to arbitration, because he felt that an arbitrator would sustain her discharge, but that she had the right to appeal his decision. Guerra did so; Hallford was overruled; and the union requested arbitration in late July.

Arbitration was conducted by the American Arbitration Association. An arbitrator was selected in October 1991, with the arbitration date being subject to his schedule. The first dates he offered were in June 1992, and the union agreed to those, as well as to others. The AAA scheduled the arbitration for that November.

Guerra claims that the arbitration was postponed further because the union's attorney, Glenda Pittman, was not prepared. Although Guerra disclosed to the union that, as noted *supra*, she was originally told she would be discharged for poor work performance, ultimately, the reason she was discharged, as she told

5

the union, was misconduct. Therefore, as Guerra testified, it was reasonable for Pittman to construct the grievance case on discharge for misconduct. When Pittman began reviewing the file for arbitration, however, it appeared that SWBT then claimed to have discharged Guerra not only for misconduct, but also for poor work performance. Accordingly, Pittman sought a pre-hearing ruling limiting the grounds to misconduct. But, after a conference call with counsel, the arbitrator declined to limit the grounds and postponed the November hearing until mid-December, to allow preparation for the work performance issue.

Next, the December arbitration was postponed at the request of SWBT's attorney because of pregnancy complications. Upon pressure from Pittman, however, SWBT obtained another attorney; the arbitration was scheduled for late January 1993.

While the union was processing her arbitration, Guerra filed a second separate action against SWBT. It settled that action; pursuant to the settlement agreement, Guerra dismissed all pending actions and, by a January 11, 1993, letter to the union, ordered the arbitration cancelled, only 11 days before it was scheduled. And a few weeks later, this action was filed.

Guerra asserts that, if the union breached its duty of fair representation, she is relieved under *Vaca v. Sipes*, 386 U.S. 171, 186 (1967), of the obligation to exhaust administrative remedies. She bases breach on two intertwined grounds. First, she claims that the union was perfunctory in processing her grievance, that its representative failed to properly investigate and interview

6

pertinent witnesses, and that its attorney was unprepared. But, a breach of the duty of fair representation occurs only when the union's conduct is "arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process". *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). "A union does not breach its duty of fair representation, however, through simple negligence or a mistake in judgment." *Id.* Nor does it breach that duty if its "conduct in processing an employee's grievance was `less than enthusiastic' and `not perfect'". *Id.*

Therefore, as a matter of law, Guerra has not shown that the fairness or integrity of the grievance process was undermined. Moreover, her conclusionary assertion of futility is insufficient; she has not met her burden of producing "evidence that resort to available grievance procedures would in fact be futile". *Parham v. Carrier Corp.*, 9 F.3d 383, 391 (5th Cir. 1993). To the contrary, she elected arbitration, but then cancelled it, thus depriving "the union the opportunity to act on [her] behalf." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965). In sum, a reasonable juror could not have found that the union breached its duty of fair representation.

For her second line of attack, Guerra claims that the delay of over two years, from her discharge until she cancelled the arbitration, constituted a breach of that duty. For starters, Guerra caused part of the delay. In January 1991, the union had to withdraw its mediation request because she had prematurely

7

initiated an action at law against SWBT and the local; and, in mid-January, she caused the meeting scheduled for Austin to be delayed until April 1991, because she had it changed to Houston.

In addition, neither the delay due to the arbitrator's schedule nor that caused by the pregnancy complications of SWBT's attorney can be attributed to the union. And, finally, it cannot be faulted for the delay caused by belatedly having to defend against discharge for poor work performance in addition to misconduct. In short, the union was not dilatory and did not breach its duty of fair representation because of delays in Guerra's grievance procedure.

The fact of the matter is this: on the brink of the much delayed and hard fought for arbitration, Guerra cancelled it. In essence, she then elected her remedy -- her contemporaneous settlement with SWBT. There was no breach by the union; the district court properly granted judgment as a matter of law.

B.

Martinez's employment was terminated in February 1991 for insubordination equating to misconduct for failure to follow instructions. Dismissal was based also on his repeated violations of company policies and practices during his 17 years of employment.

Martinez filed a grievance with his local. After it was denied at the first and second step meetings, the third step meeting was scheduled for mid-June 1991; but, when Martinez failed to appear, it had to be rescheduled for the end of August. SWBT

8

again denied the grievance at that meeting; and, pursuant to the collective bargaining agreement, Martinez had 60 days to demand arbitration.

By letter dated October 11, 1991, union representative Hallford advised Martinez that he could not recommended arbitration because of the difficulty in overcoming Martinez's disciplinary record, but that Martinez could contact his local to appeal this decision. It was not until early that December that Martinez requested an appeal of Hallford's decision. The local, by letter of December 4, requested that Hallford recommend arbitration.

By letter dated January 6, 1992, to the local, with a copy to Martinez, Hallford replied that the time for arbitration had expired and that he did not know what further action could be taken by the union. Hallford then sent another letter to Martinez, dated April 3, 1992, stating that the union could not take further action on the grievance. Martinez testified that he did not realize that he had a claim until his discussion with a union steward in September, 1992, and asserts that only then did he become aware that the union did not intend to pursue the claim further.

The limitations period for filing an unfair labor practice claim is six months. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983) (borrowing six-month period from § 10(b) of National Labor Relations Act, 29 U.S.C. § 160(b)). Pursuant to *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989), the period begins to run when the plaintiff "knew or should

9

have known" of any breach by the union of the duty of fair representation.

At the very latest, Martinez should have known that the union did not intend to pursue his claim when he received Hallford's April 3, 1992 letter, which stated that "[t]here is no further action that [the union] can take in regards to your grievance.... Any further action that can be taken would have to be of a legal nature and you would have to initiate those." But, this action was not filed until more than ten months later, in February 1993. His claims are time-barred.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*