Peggy JOHNSON, Plaintiff,

v.

ALCATEL NETWORK SYSTEMS, INC., Defendant.

Civil Action No. 3:95–CV–2175–G.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 28, 1996.

Paul F. Carnes, Law Office of Paul F. Carnes, Dallas, TX, for plaintiff.

Robert Elwood Sheeder, Jenkens & Gilchrist, Dallas, TX, for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of the defendant Alcatel Network Systems, Inc. ("Alcatel") for summary judgment on all claims asserted by the plaintiff Peggy Johnson ("Johnson"). For the following reasons, the motion is granted.

## I. BACKGROUND

Collins Radio Company ("Collins") hired Johnson on March 18, 1968 to work at Collins' Richardson, Texas facility. Plaintiff's Response to Motion for Summary Judgment ("Response") at 2. Rockwell International Corporation ("Rockwell") subsequently purchased Collins' plant. Memorandum in Support of Defendant Alcatel Network Systems, Inc.'s Motion for Summary Judgment ("Motion Memorandum"), Exhibit A, Oral Deposition of Peggy Johnson ("Johnson Deposition") at 35. Thereafter, defendant Alcatel purchased the Richardson, Texas facility from Rockwell. Johnson Deposition at 35–36. Johnson worked for Alcatel and its predecessor companies from March 18, 1968 to February 25, 1994. Response at 2. Alcatel's acquisition of Rockwell did not impact the basic terms and conditions of Johnson's employment. Johnson Deposition at 36.

At the time that Johnson filed the present suit, Alcatel employed Johnson as an electronics technician. Notice of Removal, Exhibit A, Plaintiff's Original Petition ("Petition") at 1. In this capacity, Johnson inspected and tested fiber optics equipment. Johnson Deposition at 47. On November 4, 1993, Johnson claimed that she had incurred a work-related injury after using an unfamiliar inspection station. Response at 2. Specifically, Johnson complained of neck and shoulder pain. Johnson Deposition at 87. Thereafter, Johnson sought a diagnosis of her condition from Dr. Jeffrey Adcock. Johnson Deposition at 94; Johnson Deposition Exhibit 32. Dr. Adcock concluded that Johnson suffered from muscle strain in the right scapula. Johnson Deposition Exhibit 32.

Beginning November 9, 1993, Alcatel granted Johnson a leave of absence, and Alcatel extended Johnson's leave monthly thereafter through March 14, 1994. Johnson Deposition at 106–08. Alcatel staff nurse Sharon Limes approved Johnson's monthly extended leaves of absence. Johnson's Deposition at 108–09.

On November 16, 1993, Alcatel filed the Employer's First Report of Injury or Illness with the Texas Workers' Compensation Commission to enable Johnson to receive workers' compensation. Johnson Deposition at 88–89; Johnson Deposition Exhibit 24. Johnson concedes that Alcatel assisted her in receiving workers' compensation benefits. Johnson Deposition at 91. From November 9, 1993 through September 26, 1994, Johnson received $16,718.00 in such benefits. Johnson Deposition at 103. Additionally, during her first six weeks of leave, Alcatel paid Johnson 100% of her usual wages; thereafter, while she received workers' compensation benefits, it paid Johnson 70% of her normal wages. Johnson Deposition at 101–02.

On January 4, 1994, Johnson consulted Dr. Peter Rappa, a specialist in physical medicine and rehabilitation. Johnson Deposition at 110–11. On January 12, 1994, Dr. Rappa placed restrictions on Johnson's work assignments. Johnson Deposition at 164. Specifically, Dr. Rappa recommended that Johnson be restricted to desk work for no more than 4 hours per day with no standing, walling, crawling, reaching overhead, pushing, pulling, or carrying weight. Johnson Deposition Exhibit 64. He also advised Johnson that she could occasionally balance, stoop, kneel, crouch, or climb. Johnson Deposition Exhibit 64. Due to the severity of Dr. Rappa's work restriction recommendations, Alcatel extended Johnson's leave of absence. Johnson Deposition at 107–08. Johnson contends that Nurse Limes contacted Johnson's doctor's on several occasions and requested that the doctors recommend that Johnson return

to work. Response, Affidavit of Peggy Johnson ("Peggy Johnson Affidavit") ¶ 4.

Alcatel learned that Johnson's husband, Lee Johnson,[1] a former Alcatel employee, recently had begun selling liquidated merchandise from the Johnson home and at flea markets. Defendant Alcatel Network Systems, Inc.'s Motion for Summary Judgment ("Motion") at 4. Alcatel then authorized private investigators to place Johnson under professional surveillance. Motion Memorandum at 3.

On February 6, 1994, the Alcatel investigators filmed Johnson at her husband's flea market stand in Canton, Texas. Motion Memorandum at 3. Alcatel contends that the videotape depicts Johnson "wait[ing] on customers, lift[ing] merchandise and other assorted boxes, and help[ing] set up and take down their sales booth." Motion Memorandum at 4. Johnson admitted in her deposition that she indeed assisted her husband in setting up the sales booth, carrying merchandise, selling merchandise, and lifting wooden display tables weighing three pounds. Johnson Deposition at 179–81. Johnson agreed that these actions violated her work restrictions as ordered by Dr. Rappa. Johnson Deposition at 182. In her Response, however, Johnson asserts that the videotape reveals her "lift[ing] only very light merchandise and empty boxes," and Johnson contends that she did not violate Dr. Rappa's work restriction orders. Response at 4–5; Peggy Johnson Affidavit ¶ 7.

Effective February 24, 1994, Alcatel terminated Johnson's employment. Johnson Deposition Exhibit 66.[2] Alcatel contends that it fired Johnson, pursuant to Article XXV and Company Rule 9 (set forth in the collective bargaining agreement ("CBA") between the International Union of Electronic, Electrical, Salaried Machine & Furniture Workers, Local 787 ("Union") and Alcatel), after reviewing the videotape and written reports from

its private investigators. Johnson Deposition Exhibit 66; Motion Memorandum at 4. Johnson was a member of the Union and as such was subject to the CBA's terms and conditions. Johnson Deposition at 36–38. Article XXV provides that "[a]ny industrial employment without sanction by the [c]ompany during any leave of absence shall automatically cause a forfeiture of seniority rights." Johnson Deposition Exhibit 8. The General Company Rules state that "[v]iolation of the following rule[ ] may be cause for discharge: ... 9. Dishonesty, stealing, or cheating. Forging or falsifying action to the detriment of fellow employees or the [c]ompany." Johnson Deposition Exhibit 8.

Alcatel asserts that Alcatel, Alcatel's predecessor companies, and arbitrators have consistently interpreted the term "industrial employment" in Article XXV to "encompass any employment in any trade or business" and the phrase "dishonesty, stealing, cheating" in Company Rule 9 to "include violating one's work restrictions while on a leave of absence." Motion Memorandum, Exhibit B, Michael Kelly Affidavit ("Kelly Affidavit") ¶ 11. Alcatel contends that Johnson aided her husband in the operation of a business and disobeyed her work restriction orders in violation of the CBA. Kelly Affidavit ¶ 10. Alcatel maintains that for more than fifteen years, it routinely has discharged employees who violated either provision of the CBA. Kelly Affidavit ¶ 11.

Johnson contends in this case that Alcatel has misinterpreted the term "industrial employment" as it applies to her and that this constitutes retaliatory action. Johnson Deposition at 202, 228. Specifically, Johnson asserts that work at a flea market does not constitute "industrial employment" as defined in the CBA. Johnson Deposition at 202, 227–28; Response at 4–5.

---

1. While Peggy Johnson and Lee Johnson have been legally divorced for thirteen years, they cohabit and continue to hold themselves out as husband and wife. Johnson Deposition at 20–21.

2. The letter reads in part:

I regret to advise you that effective February 24, 1994, your employment status with Alcatel Network Systems, Inc. has been changed from leave of absence to termination.

This action is consistent with Article XXV of the Collective Bargaining Agreement and is taken as a result of your violation of said Article and/or your violation of General Company Rule # 9.

Johnson Deposition Exhibit 66.

On April 5, 1994, Alcatel denied a grievance filed by Johnson on March 8, 1994, in which Johnson contested her discharge. Johnson Deposition Exhibit 67. On April 21, 1994, Johnson filed an additional grievance in which she deemed the disposition of her March 8, 1994 grievance unsatisfactory. Alcatel also denied Johnson's second grievance. Johnson Deposition Exhibit 68. On January 11, 1995, Johnson appealed Alcatel's denial to arbitration. Johnson Deposition Exhibit 68. On February 9, 1996, Union day chief steward Porter Foster withdrew Johnson's grievance rather than proceed to arbitration.[3] Kelly Affidavit Exhibit 3.

Johnson filed this action in state district court on August 28, 1995, alleging that Alcatel wrongfully discharged Johnson for filing workers' compensation claims, in violation of the Texas Workers' Compensation Act, Tex. Lab. Code Ann. § 451.001 (Vernon 1996). Petition at 2. Alternatively, Johnson contends that Alcatel "adopted a company wide policy that required certain employees such as Peggy Johnson to perform their work at a certain capacity," that Alcatel required Johnson to work at a capacity at which Johnson was unable to work due to her "pain and discomfort," and that Alcatel discharged Johnson for being unable to work at full capacity. Petition at 2 (emphasis omitted). Alcatel timely removed the case to this court.

Alcatel maintains that it is entitled to summary judgment on Johnson's claims because (1) Johnson has presented no evidence of a retaliatory or discriminatory motive in Alcatel's discharge of Johnson; (2) Johnson's claim is preempted by the Labor Management Relations Act ("LMRA") § 301; and (3) Johnson has failed to exhaust her administrative remedies, and her claim is barred by the applicable statute of limitations. Motion at 7–8.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A movant for summary judgment makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the nonmovant's case. Celotex Corporation v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact remains. Fed.R.Civ.P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issue in his or her favor. Anderson, 477 U.S. at 257, 106 S.Ct. at 2514–15. While all of the evidence must be viewed in a light most favorable to the motion's opponent, id. at 255, 106 S.Ct. at 2513–14 (citing Adickes v. S.H. Kress & Company, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)), parties may not use conclusory allegations as evidence to support or defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

---

**3.** Foster explained to Johnson that Alcatel's application of the relevant CBA provisions was consistent with previous arbitration decisions. Johnson Deposition at 291–92.

Summary judgment is properly entered against a party if after adequate time for discovery, she fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### B. *Texas Workers' Compensation Act*

Johnson contends that Alcatel violated the Texas Workers' Compensation Act ("TWCA"), TEX. LAB. CODE ANN. § 451.001 (Vernon 1996) (formerly TEX. REV. CIV. STAT. ANN. art. 8307c), by discharging Johnson in retaliation for her filing workers' compensation benefit claims. Petition at 2. Texas law prohibits an employer from discharging or otherwise discriminating against an employee who in good faith files a workers' compensation claim. TEX. LAB. CODE ANN. § 451.001(1) (Vernon 1996). The Texas legislature enacted the TWCA "to protect persons who are entitled to benefits under the Worker's [sic] Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Company v. Borner,* 610 S.W.2d 450, 453 (Tex.1980) (citation omitted).

▮ Under the TWCA, a complaining employee has the burden of establishing that the filing of the employee's workers' compensation claim was causally related to the employer's decision to discharge the employee. *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 589–90 (5th Cir.1995); *Parham v. Carrier Corporation,* 9 F.3d 383, 386 (5th Cir.1993) (citing *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1090 (5th Cir.1991)); *Texas Department of Human Services of the State of Texas v. Hinds,* 904 S.W.2d 629, 636–37 (Tex.1995) (citing *Hughes Tool Company v. Richards,* 624 S.W.2d 598, 599 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982)). Unless an employee can raise a genuine issue of material fact regarding the alleged discrimination or retaliation for filing workers' compensation claims, summary judgment in the

employer's favor is appropriate. *Unida v. Levi Strauss & Company,* 986 F.2d 970, 978 (5th Cir.1993).

▮ The TWCA does not contemplate that an employee must show that the filing of her workers' compensation claim or claims was the sole cause of her termination, but it does require an employee to demonstrate that the filing was a "determining factor" in the discharge. *Parham,* 9 F.3d at 386 (citing *Roadway Express,* 931 F.2d at 1090); *Pope v. MCI Telecommunications Corporation,* 937 F.2d 258, 265 (5th Cir.1991) (citing *General Electric Company v. Kunze,* 747 S.W.2d 826, 830 (Tex.App.—Waco 1987, writ denied), and *Azar Nut Company v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987)), *cert. denied,* 504 U.S. 916, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992). That is, the complaining employee "must produce some credible evidence of the employer's retaliatory motive." *Thomas v. LTV Corporation,* 39 F.3d 611, 620 (5th Cir.1994) (citing *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312 (Tex.1994) (per curiam)). The employee may prove causation via direct evidence or circumstantial evidence. *Burfield,* 51 F.3d at 590 (citing *Investment Properties Management v. Montes,* 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ)).

▮ Even if the employee establishes the requisite causal nexus, however, summary judgment is appropriate if the employer rebuts the alleged retaliatory discharge by "showing a legitimate reason for the discharge" unrelated to the employee's filing of workers' compensation benefits. *Roadway Express,* 931 F.2d at 1090 (citing *Hughes Tool,* 624 S.W.2d at 599). See *Carrozza,* 876 S.W.2d at 313–14. An employer may terminate an employee if the discharge is based on a good faith belief that the employee engaged in misconduct. *Burfield,* 51 F.3d at 590.

▮ In this case, Johnson has presented no evidence that her termination by Alcatel was a result of her filing a workers' compensation claim.[4] See, *e.g.,* Johnson Deposition at 201–02. See *Swearingen v. Owens–Corning Fiberglas Corporation,* 968 F.2d 559, 563 (5th Cir.1992); see also *Parham,* 9 F.3d at

---

4. Alcatel, on the other hand, provided the affidavit of Michael Kelly, Alcatel's director of human

resources for operations and Alcatel's CBA administrator, stating that

389. Johnson's subjective belief of discrimination will not support a claim under the TWCA. See *Pope,* 937 F.2d at 265; *Carrozza,* 876 S.W.2d at 313–14.

Because Johnson has failed to show any dispute of fact as to whether her filing of a claim for workers' compensation was a determining factor in Alcatel's decision to discharge her, judgment must be granted for Alcatel on Johnson's claim under the TWCA. See *Swearingen,* 968 F.2d at 563. Furthermore, Johnson has produced no evidence to support her claim that Alcatel violated the TWCA by discharging Johnson pursuant to a company wide policy which required Alcatel employees to perform at certain work capacities. *See* Johnson Deposition at 226, 229; Petition; Response.

### C. *Labor Management Relations Act*

Alcatel contends that Johnson's TWCA claim is preempted by LMRA § 301. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Congress passed § 301 to allow "federal courts to fashion a body of federal law for the enforcement of ... collective bargaining agreements." *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The Supreme Court has thus determined that if the state law cause of action arising out of contract or tort is inextricably intertwined with interpretation of the terms of the collective bargaining agreement, the state law claim is preempted by § 301. *United Steelworkers of America, AFL–CIO–CLC v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 1909–10, 109 L.Ed.2d 362 (1990); *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988); *Allis–*

*Chalmers Corporation v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985); see also *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 97 (5th Cir.1996) (citing *Thomas,* 39 F.3d at 616); *Roadway Express,* 931 F.2d at 1089; *Baker v. Farmers Electric,* 34 F.3d 274 (5th Cir. 1994). In those cases where resolution of the state law claim does not require an interpretation of the collective bargaining agreement, the claim is deemed "independent," and is not preempted. See *Roadway Express,* 931 F.2d at 1089; see also *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883 ("as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes"). But see *Medrano v. Excel Corporation,* 985 F.2d 230, 233 (5th Cir.) (holding that "[u]nlike the plaintiff's claim in *Roadway Express* ..., [plaintiff]'s claim is indeed inextricably intertwined with a consideration of the terms of the CBA"), *cert. denied,* 510 U.S. 822, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993).

■ Alcatel presented Johnson's deposition testimony to support its motion for summary judgment. Johnson testified in her deposition that interpretation of the CBA was the basis for her TWCA claim. It is clear from Johnson's deposition testimony that her claim that Alcatel violated the TWCA is dependent on and thus "inextricably intertwined" with interpretation of the terms of the CBA. *See* Johnson Deposition at 202, 227–28 discussed *supra;* see also *Thomas,* 39 F.3d at 621; *Medrano,* 985 F.2d at 233–34. Johnson's claim does require interpretation of the CBA, and, therefore, Johnson's claim is preempted by LMRA § 301.

### III. *CONCLUSION*

For the reasons stated above, summary judgment in favor of Alcatel is **GRANTED** on all claims asserted by Johnson.

**SO ORDERED.**

---

On February 25, 1994, Peggy Johnson was discharged pursuant to the CBA because she worked for her husband's business, and violated her work restrictions, while on a medical leave of absence. Alcatel did not consider Peggy Johnson's previous workers' compensation claim in discharging her.
Kelly Affidavit ¶ 10.