TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00517-CV






Mohammad Siddiqui, Appellant



v.



Yellow Freight System, Inc. and Richard Cockrell, Appellees







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. 94-0031, HONORABLE FRED A. MOORE, JUDGE PRESIDING







 Mohammad Siddiqui appeals from a judgment that he take nothing on his claim
against Yellow Freight System, Inc. and Richard Cockrell for personal injuries resulting from a
collision involving his car and a Yellow Freight tractor-trailer rig ("the truck") driven by Cockrell. 
Siddiqui contends that the court erred by admitting police reports regarding a third-party's
intoxication, by commenting on the weight of the evidence, and by unfairly limiting his time to
consider the jury charge and to argue the case before the jury. We will affirm the judgment.


BACKGROUND


 Siddiqui was injured in August 1992 when his car ran up under the second trailer
of the appellees' truck. The two sides view the events surrounding the crash quite differently.

 Our evidentiary review is guided by the nature of the trial and the issues on appeal. 
Because Siddiqui's appellate issues focus on liability, we need not recount exhaustively the
testimony of Siddiqui's injuries, medical expenses, and damages. It suffices to note that there was
evidence that Siddiqui suffered serious injuries, underwent extensive medical treatments, and
incurred medical expenses and other damages, and that the physical, emotional, mental, and
financial effects of his injuries persist.

 Siddiqui testified that, upon entering the right lane of Interstate Highway 35 in San
Marcos, he noticed a truck in the left lane traveling much faster than his Subaru and rapidly
overtaking him. He said that the truck's trailers were weaving and that the lead trailer came very
close to him. He said that when the second trailer quickly crossed into his lane, he tapped his
brakes; he never testified that the trailer hit him, but agreed that it was "on top" of him. His next
memory was of waking up in the hospital. He said he testified in his deposition that a car hit him
from behind and knocked him under the truck only because he was told that happened. He said
he consistently told his wife and the trucking company about the trailers coming toward him.

 Siddiqui's expert, John Patterson, testified that the damage to the Subaru and
skidmarks indicated that the truck was moving into the right lane when the skidmarks began; he
estimated that the truck was somewhere between six and sixteen inches into the right lane. 
Patterson criticized police for not collecting enough information at the scene and for not
questioning Siddiqui regarding the accident until years afterwards. He also testified that post-crash
photographs of Siddiqui's vehicle belied police reports that a gouge mark on the pavement was
created by his wheel; the reports indicated that the tire was removed from the wheel, but the
photographs show the flat tire still on the wheel.

 Cockrell, the truck driver, testified that he was traveling in the right lane of IH-35
when Siddiqui entered the freeway. Because Siddiqui was traveling slower than the speed limit,
Cockrell moved into the left lane. Cockrell testified that his truck had a governor that prevented
driving faster than 62 miles per hour ("mph"). Cockrell said he heard a third vehicle approaching
too rapidly. He said a Toyota clipped Siddiqui's car while trying to pass on the right shoulder,
sending the Subaru into the trailers. Cockrell said Siddiqui's car bounced off the trailers, then
veered back under. Cockrell used both accelerator and brakes while slowing to avoid bouncing
on Siddiqui or rolling over. The truck dragged the Subaru about 600 feet before coming to a stop. 
Cockrell saw pieces of the Toyota on the highway, and saw the Toyota exiting with damage to its
left front and smoke coming from the hood. Cockrell said he saw the Toyota driver throw out a
can filled with liquid. Pursuant to company policy, Cockrell went to the hospital to be tested for
blood-alcohol level. There, he saw Joseph Stasulli, a man identified to him as the Toyota driver;
Cockrell said he would not have recognized Stasulli had he not been identified. He said Stasulli
was glassy-eyed, smelled of alcohol, was belligerent, and threatened him.

 Stasulli's version of the events agreed with some parts of Cockrell's testimony but
diverged in others, particularly regarding his own condition and actions. He admitted that he had
been drinking, but testified that he did not feel intoxicated. On cross-examination, he testified that
he drank about six beers between midnight and 3 a.m. when he and a friend drove to San Marcos. 
They continued to drink, consuming about two more beers before taking the road after 8:00 a.m. 
He said he was driving about 70-75 mph and moved into the right lane to pass the truck, which
he said was driving about 65 mph. He testified that he did not see the truck cross the lane stripe. 
Stasulli said that, when he pulled into the right lane, Siddiqui was in front of him. Siddiqui hit
his brakes, and Stasulli swerved to the right shoulder to avoid him. Stasulli clipped the rear of
Siddiqui's car. He said he then exited to report the accident to police. He denied throwing a
beverage can out of his vehicle, being belligerent at the hospital, needing assistance to stand, or
confronting Cockrell. Stasulli testified that he felt somewhat responsible for the accident, and that
he did not blame Cockrell for any of it.

 Brenda and Henry Trimble, who were in a Suburban trailing the accident, testified
by deposition. Brenda, the driver, said that the truck was traveling in front of her in the right lane
at 55-60 mph and signaled before changing to the left lane to pass Siddiqui's slower-moving
Subaru. She testified that the Toyota came up very fast behind her in the right lane (she believed
that the Toyota remained in the right lane at all times) and that she moved left to get out of his
way. The Toyota then passed her and hit the Subaru, pushing it under the rig. She said she did
not see any brake lights on the Subaru, but could not say with certainty that the lights were not on. 
She said the truck was in the middle of the left lane at time of impact. She blamed the Toyota
driver for the accident, assessing no blame to the truck driver. Henry, her passenger, testified
similarly. He said that the truck had completely passed the Subaru, but that the boost from the
rear-end collision by the Toyota propelled the Subaru forward and under the rig's trailer.

 Delma and Margaret Busby, who were in a Cadillac in front of the accident, also
testified similarly. The only difference of any significance was that Delma testified that Siddiqui's
Subaru was alongside the truck when it was hit. He believed that Siddiqui was driving less than
50 mph, that the Toyota was exceeding that rate, and that the Toyota hit the Subaru and propelled
it under the rig. He confirmed that the Toyota was smoking after the accident and appeared to
have damage on the front left side, indicating that the Toyota had attempted to go around the right
side of the Subaru. He testified that the truck was not swerving, weaving, speeding, or driving
too close to the lane divider. Margaret, the passenger, testified essentially the same as Delma.

 San Marcos police officer Wade Parham testified that he was on the scene shortly
after the accident. He confirmed that on his accident report he checked the boxes for drunk and
drinking when describing Stasulli. He also testified that he found an impact site on the right-side
shoulder; that site was indicated by a scuff mark and broken glass and reflectors. He said there
was some fluid on the right side of the road, possibly from Stasulli's vehicle. Parham also
testified that there was a second point of impact further down the road in the left lane marked by
gouge marks or scraping.

 San Marcos police officer Dan Misiaszek testified by deposition and at trial. In his
deposition, he testified that he participated in the arrest of Stasulli. He testified that Stasulli
exhibited classic signs of intoxication--he smelled like alcohol, had glassy eyes, had poor balance
and hand-eye coordination, and slurred words; Stasulli's presence caused the inside of the patrol
car to smell of alcohol. Stasulli's blood-alcohol test showed .20 milliliters of alcohol per 100
milliliters of blood. Misiaszek photographed the beer in the Toyota, and recalled that the Toyota
smelled like alcohol. He testified that the front left side of the Toyota was damaged severely
enough to puncture the radiator. Misiaszek said that Stasulli was arrested for failure to stop and
render aid--a felony because of the severity of Siddiqui's injuries. Misiaszek opined that Stasulli
was driving 20 to 30 mph faster than Siddiqui's Subaru, struck the right rear of the Subaru as he
attempted to pass him on the right shoulder, and pushed Siddiqui's vehicle underneath the rig. He
testified that the truck driver did a remarkable job of not locking his brakes or rolling the vehicle. 
He testified that Cockrell may actually have minimized Siddiqui's injuries and saved his life. 
Misiaszek testified that Siddiqui's car tilted up to forty-five degrees under the truck, causing the
right tire to blow and the wheel to gouge the pavement. He testified that the skid marks moved
toward the left, and that he found no evidence that the truck veered into the right lane.

 During the trial, Misiaszek testified that he first spoke with Siddiqui regarding the
accident in 1998. Misiaszek conceded that there was no formal extrapolation done regarding
Stasulli's blood-alcohol levels. He described his photos as showing two major impacts on
Siddiqui's car, and disagreed with characterizations that there were four or seven impacts. He
agreed that empty trailers were less stable than loaded ones.

 The appellees' accident reconstruction expert, Luther O. Cox, Jr., testified that the
physical evidence was consistent with eyewitness testimony. He said the fact that the Toyota's
bumper slid over the Subaru's indicated that neither car was braking. He testified that the
evidence supported a finding that Siddiqui's car first hit the truck near the tractor, then slid back
under the trailers. He said there was no physical evidence to support a collision involving the
truck in the right lane. He agreed that if a truck driver made a slight turn to the right, then a slight
turn back to the left that a double trailer would react with a snake-like motion.


DISCUSSION


 Siddiqui raises three issues on appeal. He complains that the trial court erred by
allowing police reports into evidence for an improper purpose, by commenting on the weight of
the evidence in the presence of the jury, and by excessively restricting his attorney's time to
review the charge and to present argument.

 Siddiqui contends that the court violated Texas Rule of Evidence 403 by admitting
police reports and other evidence to argue collateral issues arising from Stasulli's alleged
intoxication. We will reverse only if the court abused its discretion in admitting the evidence. 
Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759, 772 (Tex. App.--Corpus Christi 1999, pet.
abated). Rule 403 provides that, "Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." To reverse, we must also find that any error in admitting the evidence probably caused
rendition of an improper judgment or prevented proper presentation of the error to this Court. See
Tex. R. App. P. 44.1(a).

 We will consider in depth only a few of the excerpts in which Siddiqui asserts the
district court's rulings violated Rule 403. He has waived appellate review under issue one of the
excerpts that do not contain objections on Rule 403 grounds. See Wal-Mart Stores, Inc. v. Garcia,
974 S.W.2d 83, 87 (Tex. App.--San Antonio 1998, no pet.). Further, we find no reversible error
in one of the assigned passages containing a Rule 403 objection because the district court sustained
his Rule 403 objection.(1) We will consider the remaining excerpts containing Rule 403 objections.

 The remaining excerpts involve the appellees' offer of a letter from the Department
of Public Safety containing the results of Stasulli's blood-alcohol test and the appellees' line of
questions regarding the truck driver Cockrell's observations of Stasulli's behavior at the
emergency room. The letter came in during Stasulli's testimony. The other excerpt is from the
appellees' cross-examination of Cockrell regarding events at the emergency room following the
accident:


 Q. Okay, in the emergency room, how was it you were able to identify an
individual being there as Stasulli?


 [Siddiqui's attorney] MR. PINK: Again, Your Honor, we would--we would object
to the--excuse me, sir.


 We would object to the--to the question, Your Honor, as calling for a
conclusion, and the predicate has not been set for that particular proven, and I
would also point out, Your Honor, that it--it's getting into collateral matters under
403, sir. And the prejudicial effect outweighs any probative value at this time to
that testimony.


Shortly afterwards, the court let the appellees elicit, over Siddiqui's running Rule 403 objection,
testimony from Cockrell about signs of intoxication that Stasulli exhibited in the emergency room.

 We find no harm in the admission of either the test results or Cockrell's
observations of Stasulli's condition. Both are probative of Stasulli's ability to drive competently
and safely. This evidence is fair, not misleading, and is even reconcilable with Siddiqui's theory
of the collisions because the jury could have believed that Cockrell's driving caused the accident
irrespective of Stasulli's intoxication. Its failure to do so does not prove that the admission of
intoxication evidence was unfair.

 Even if the court erred by allowing this line of questioning, Siddiqui has not shown
harm.(2) Any problems with how Cockrell identified Stasulli were not harmful to Siddiqui because
there is no dispute that Stasulli was involved in the accident. Cockrell's testimony regarding
Stasulli's condition was cumulative of other such evidence, including Stasulli's own testimony that
he drank beer and stayed up all night before the accident. The letter was merely scientific
confirmation of the observations of Stasulli's behavior. More important, however, eyewitnesses
not involved in the accident, the truck driver, police officers, the appellees' reconstruction expert,
and Stasulli himself all testified that the truck did not cross into Siddiqui's lane and that Stasulli
initiated the collisions by ramming Siddiqui. Against that overwhelming evidence, Siddiqui cannot
show as required that the admission of evidence regarding Stasulli's intoxication probably caused
the rendition of an improper judgment. We resolve issue one against Siddiqui.

 Siddiqui next contends that the district court abused its discretion by commenting
on the weight of the evidence in the presence of the jury. Because the trial court has considerable
discretion in controlling the orderly progress of the trial, the court may ask the purpose of a line
of questioning. Pacesetter Corp. v. Barrickman, 885 S.W.2d 256, 261 (Tex. App.--Tyler 1994,
no writ); see also Prudential Ins. Co. v. Uribe, 595 S.W.2d 554, 569 (Tex. App.--San Antonio
1979, writ ref'd n.r.e.). Even if the court comments on the weight of the evidence, we must
examine the statements in light of the entire record to determine whether they amounted to
reversible error. Pacesetter, 885 S.W.2d at 261; see also TEIA v. Garza, 557 S.W.2d 843, 846
(Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.).(3) Finally, "an objection to improper
conduct or comment on the part of the court in the trial of the case generally must be made at the
time of the occurrence if the error is to be preserved for appellate review unless the conduct or
comment is of a character that cannot be rendered harmless by proper instruction." State v.
Wilemon, 393 S.W.2d 816, 818 (Tex. 1965); see also Pacesetter, 885 S.W.2d at 261.

 Siddiqui provides eleven record excerpts in which the district court ruled on
objections, explained the reasons for its rulings, or commented regarding the conduct of the trial. 
We will first review the three instances in which Siddiqui objected to the comments by the court.

 When Siddiqui's attorney, Walter Pink, was conducting his direct(4) examination of
Cockrell, the truck driver, the following exchange occurred:


 Q. Were you--were you upset over Mr. Siddiqui pulling in front of you?


 [Appellees' attorney]: Your Honor, I'll object to that characterization of the
testimony. There has been no testimony that the vehicle pulled in front of the
truck.


 THE COURT: If you don't agree with what the lawyer says, or they're putting
words in your mouth, don't agree with them. Tell them, "That's not how I recall
it." If you can answer the question, answer the question; if you can't, ask him to
ask it again.


 THE WITNESS:  I can't answer that one.


 MR. PINK: Just for the record, Your Honor, we would--we would respectfully
object to the colloquy that was had based on improper jury argument in terms of
a speaking objection as well as the comment thereafter by the Court, sir, please.


 THE COURT:  Okay.


The district court did not comment on the weight of the evidence or instruct the witness what to
say, but told the witness he could express inability to answer the question posed. Following the
quoted passage, Siddiqui's attorney immediately surmounted the appellees' objection by eliciting
testimony from the truck driver that Siddiqui pulled onto the interstate in front of him, forcing him
to change lanes. The court's comments may have assisted Siddiqui in eliciting that testimony
without further objections. This falls within the realm of the court's ability to ensure the orderly
conduct of the trial.

 Siddiqui also cites as error the following colloquy during the appellees' cross-examination of San Marcos police officer Wade Parham:


 Q. Was that location of the point of impact between Mr. Siddiqui's vehicle and
Mr. Stasulli's vehicle consistent with the information that was related to you from
witnesses--


 MR. PINK: Your Honor-- 


 A. Yes.


 MR. PINK: --we would object. Excuse me, we would object to any hearsay
information that he relied upon out there at the scene so far as this testimony is
concerned.


 THE COURT:  Well, he didn't tell us what they said. It's sustained. If he wants
to testify he looked at the physical facts and made a determination of impact after
his investigation, if that's where it is, fine. That's--it's sustained. He can't tell
whether anything's consistent with what other people told him. Ask it the way I
indicated.


 MR. PINK: And then we respectfully object to the Court's participation in terms
of assisting of the phrasing of the question, sir.


Again, the district court was attempting to expedite the trial and did not comment on the weight
of the evidence. Siddiqui asserts that the judge presiding may not testify, but the court did not
testify or even characterize the evidence; instead, it described what evidence was admissible and
what was not while sustaining Siddiqui's hearsay objection.

 In the third excerpt containing an objection, the court actually instructed the jury
to disregard his comments. The following exchange occurred when appellees were asking their
expert what he reviewed to formulate his opinion:


 Q. What about any witnesses to the accident--any other witnesses to the accident?

 

 A. Yes, I have--I almost forgot. I have talked with the Trimbles and confirmed
their testimony.


 MR. PINK: Your Honor--


 A. That they gave in deposition.


 MR. PINK: --I would object to his confirming or testifying to somebody else's
credibility.


 THE COURT:  It's overruled. I don't believe he was vouching for their
credibility. He just said he talked to them.


 MR. PINK: May I have a running objection to that and the Court's comments
also, sir?


 THE COURT: Yes, sir. Please disregard my comments except that I overruled
the objection.


 MR. PINK: We respectfully feel it prejudices, and the damage has already been
done and respectfully move for a mistrial, sir.


 THE COURT: It's denied.


The court did not comment on the weight of the evidence. The comment effectively instructed the
jurors that they were not to consider the expert's comments as vouching for the eyewitnesses'
credibility. This "instruction" actually helped Siddiqui because the court thus told jurors not to
give added weight to the testimony from the Trimbles--testimony that contradicted Siddiqui's
theory of the accident. Even if there were some harm from the court's comments, the instruction
to disregard cured that harm.

 After reviewing the remaining eight instances that Siddiqui raises on appeal, we
conclude that none was so egregious that it could not be cured by an instruction. Siddiqui
therefore waived error regarding those instances by failing to object to the court's comments. See
Wilemon, 393 S.W.2d at 818. We resolve issue two against Siddiqui.

 By his third issue on appeal, Siddiqui contends the court erred by unfairly
restricting his time to review the charge and his time to argue before the jury. The parties knew
on Thursday that the case would likely go to the jury on Monday. The parties had three hours to
review the charge on Monday. The nine-page charge contained two questions: (1) did Cockrell's
negligence, if any, proximately cause the accident? and (2) only if so, what were Siddiqui's
damages? Siddiqui's attorney had twenty-five minutes to argue.

 The trial court has wide discretion in fixing the time allowed for oral argument. 
Aultman v. Dallas Ry. & Terminal Co., 260 S.W.2d 596, 600 (Tex. 1953). We will also review
for an abuse of discretion the limitation of the time to review the charge.

 We overrule Siddiqui's complaint respecting time to review the charge. Siddiqui
may have waived this error by not timely objecting to the limitation after the court expanded the
time to review the charge in response to his initial objection. When he complained about the
proposed fifteen minutes to read the charge, the district court relented and allowed three hours;
Siddiqui did not complain about this second limitation until after the jury had retired to deliberate. 
Even if his initial objection preserved his right to complain, we find no error for several reasons: 
(1) the parties had three days without testimony to consider what the charge should be; (2) the
parties had three hours to consider whether the two questions in the charge regarding liability and
damages satisfied their expectations; and (3) Siddiqui had a second attorney, and there is no
showing that he was impaired in any way. Perhaps most critically, however, Siddiqui has not
asserted any aspect of the charge that further review has revealed was incorrect. He therefore has
failed to show harm from the limitation on the amount of time to read the charge.

 Siddiqui complains that his attorney's infirmities prevented the attorney from
arguing his case to the jury properly and therefore from fully explaining the charge, his claims that
the appellees were negligent, and his resulting damages.(5) Pink, Siddiqui's lead attorney, stated
at trial that his medical conditions (including diabetes and injuries from a fire requiring
medication) disabled him from speaking sufficiently quickly to use the allotted time effectively. 
Siddiqui contends that the impact of this unfair limitation is apparent in the jury's complete
disregard of his expert's testimony.

 We find no abuse of discretion in the limitation on the time for argument. The
issues in the case were straightforward. Though there were three-and-a-half days of testimony,
much of it was repetitive. The evidence of Stasulli's intoxication was relevant to the causation of
the accident and was not an unnecessary distraction from Siddiqui's time for argument. Siddiqui
has not adequately explained what arguments the limitation prevented him from making. Also,
nowhere in the record is there any explanation why Siddiqui's other attorney could not have
argued the case effectively. Further, we find no indication that the jury disregarded his expert's
testimony in any improper fashion. The jury had to choose between Siddiqui's version of events
and the appellees' version. The verdict aligns with the testimony of four eyewitnesses not
involved in the collision, the two other drivers involved in the collision, the police witnesses, and
the appellees' expert. Siddiqui has not shown that the district court erred by limiting his argument
time or that the limitation probably caused rendition of an improper judgment. We resolve issue
three against Siddiqui.

CONCLUSION


 Having resolved all issues on appeal against Siddiqui, we affirm the judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: September 29, 2000

Do Not Publish


1. This is the context of the excerpt from which Siddiqui assigns error:


 A. [by Stasulli] I thought I was pleading no contest.


 Q. [by defense attorney Medina] And does this record reflect that your plea was guilty?


 A. That's what the record states.


 MR. MEDINA: I would like to offer that one part of that document into evidence.

 (Judgment marked as Defendant's Exhibit No. 9A and offered)


 THE COURT: Are you offering all of that? 


 MR. MEDINA: No, I'm only offering that one section that I've just marked as a
subpart by A.


 THE COURT: Okay, is there an objection to what, Mr. Wallace [Siddiqui's second
attorney], that is being held in his left hand, not what's being read. That's what's
being offered.


 MR. PINK: Yes, Your Honor, we would object to--excuse my seat, sir. We would
object to this document under the same objections. I could repeat them; that is, the
getting into collateral matters, 403 objections, sir; prejudicial effect, prolongs the
trial, gets into issues that are not a part of this lawsuit, sir, and we would object to
it, please, sir.


 THE COURT: May I see it?


 MR. PINK: Yes, sir.


 THE COURT: Okay, what's the purpose, to impeach the gentleman? You've
already done that. The proper manner of impeaching someone--have you been
convicted of a felony; yes, he was. Therefore, there is no need to go to the
document itself. He admitted he was convicted of failure to stop and render aid, a
third-degree felony the way you answered it.


* * *



 There's no need to go into all those documents. It's sustained.
2. He has not alleged under appellate rule 44.1(a)(2) any way in which he was prevented from
presenting these errors to this Court. 
3. At one point during his discussion under issue two, Siddiqui alleges that the court's
comments violated Texas Rule of Criminal Procedure 38.05. This civil lawsuit is governed by
the rules of civil procedure; the criminal procedure rules do not control.
4. Siddiqui elected to call most of the witnesses in the case, even those who testified adversely
to him. Appellees called only their reconstruction expert and a medical records custodian.
5. On appeal, Siddiqui alleges that the time limitation violated his attorney's rights under the
Americans with Disabilities Act ("ADA"). Setting aside the question of whether Siddiqui can
claim error from any violation of his attorney's ADA protections, Siddiqui waived this argument
by not raising it before the trial court.


sabled him from speaking sufficiently quickly to use the allotted time effectively. 
Siddiqui contends that the impact of this unfair limitation is apparent in the jury's complete
disregard of his expert's testimony.

 We find no abuse of discretion in the limitation on the time for argument. The
issues in the case were straightforward. Though there were three-and-a-half days of testimony,
much of it was repetitive. The evidence of Stasulli's intoxication was relevant to the causation of
the accident and was not an unnecessary distraction from Siddiqui's time for argument. Siddiqui
has not adequately explained what arguments the limitation prevented him from making. Also,
nowhere in the record is there any explanation why Siddiqui's other attorney could not have
argued the case effectively. Further, we find no indication that the jury disregarded his expert's
testimony in any improper fashion. The jury had to choose between Siddiqui's version of events
and the appellees' version. The verdict aligns with the testimony of four eyewitnesses not
involved in the collision, the two other drivers involved in the collision, the police witnesses, and
the appellees' expert. Siddiqui has not shown that the district court erred by limiting his argument
time or that the limitation probably caused rendition of an improper judgment. We resolve issue
three against Siddiqui.

CONCLUSION


 Having resolved all issues on appeal against Siddiqui, we affirm the judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: September 29, 2000

Do Not Publish


1. This is the context of the excerpt from which Siddiqui assigns error:


 A. [by Stasulli] I thought I was pleading no contest.


 Q. [by defense attorney Medina] And does this record reflect that your plea was guilty?


 A. That's what the record states.


 MR. MEDINA: I would like to offer that one part of that document into evidence.

 (Judgment marked as Defendant's Exhibit No. 9A and offered)


 THE COURT: Are you offering all of that? 


 MR. MEDINA: No, I'm only offering that one section that I've just marked as a
subpart by A.


 THE COURT: Okay, is there an objection to what, Mr. Wallace [Siddiqui's second
attorney], that is being held in his left hand, not what's being read. That's what's
being offered.


 MR. PINK: Yes, Your Honor, we would object to--excuse my seat, sir. We would
object to this document under the same objections. I could repeat them; that is, the
getting into collateral matters, 403 objections, sir; prejudicial effect, prolongs the
trial, gets into issues that are not a part of this lawsuit, sir, and we would object to
it, please, sir.


 THE COURT: May I see it?


 MR. PINK: Yes, sir.


 THE COURT: Okay, what's the purpose, to impeach the gentleman? Y